# STATE EX REL. HAMILTON v. GRANT, STATE AUDITOR.

MANDAMUS—OFFICE AND OFFICER—REMOVAL FROM OFFICE—SUPER-INTENDENT OF WATER DIVISION — CONSTITUTIONAL RESTRICTIONS UPON REMOVAL FROM OFFICE—CONSTITUTIONAL LAW—STATUTES—STATUTORY CONSTRUCTION.

1. After the alleged unlawful removal of one from a public office and the appointment and qualification of his successor, the former claiming to still hold the office may have his right to the salary thereof determined on mandamus to compel the proper officer to issue a warrant to him for the salary alleged to be due, though as incidental to the determination of that matter it may be necessary to decide upon the legality of the removal of relator.

2. In such case the rights of the new appointee who is not a party are not involved, as the case is not one to try the title to an office between contesting claimants, and the court will go no further in its decision than is requisite to determine the precise question presented by the issues as to the right of the relator to the warrant.

3. The superintendent of a water division of the state is not exempt from removal except by impeachment under Section

18 of Article 3 of the constitution, but he· is subject to the provisions of Section 19 of the same article, which provides that all officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law.

4. The provision of the Bill of Rights in the State Constitution, that no person shall be deprived of life, liberty or property without due process of law, is not contravened by the act (Laws of 1905, Ch. 59) authorizing any officer appointed by the Governor, or by the Governor by and with the advice and consent of the Senate, to be removed by the Governor for maladministration in office, breach of good behavior, wilful neglect of duty, extortion, habitual drunkenness, or any other cause deemed by the Governor to justify such removal, provided reason for such removal shall be filed in the office of the Secretary of State in writing, subject to inspection of any person interested.

5. There is no property right in a public office.

6. When the Legislature has conferred power on the Governor to remove an appointive officer having a definite term, but has not provided the procedure, it will not be presumed that such removal may be made without notice and a hearing; but if the authority is expressly given to proceed summarily, no such notice is necessary.

7. The act of 1905 (Ch. 59) authorizes the removal by the Governor of an officer subject to its provisions without notice or hearing, when, as therein provided, the reason for such removal is filed in the office of the Secretary of State in writing, subject to inspection by any person interested.

8. The Legislature having conferred on the Governor the power of removal from an appointive office in plenary language and declared the express conditions and limitations under which he may act, the idea is precluded that there should be conditions or limitations not expressed.

9. The Governor having removed the relator from his appointive office of Superintendent of Water Division No. 4, and filed his reasons for such removal in the office of the Secretary of State in writing, which reasons, if true, would constitute maladministration or misconduct in office, the removal was made in accordance with law, and after such removal the relator was not entitled to the salary of the office.

10. A superintendent of water division is not a judicial officer of the state within the meaning of Section 18 of Article 3 of the State Constitution, providing that "the Governor and other state and judicial officers, excepting justices of the peace, shall be liable to impeachment."

[Decided August 1, 1905.] (81 Pac., 795.)

Original proceeding in mandamus.

Mandamus to compel the State Auditor to issue a warrant for the salary claimed by the relator, Octavius A. Hamilton, as Superintendent of Water Division No. 4. The relator had been removed by the Governor, and his successor appointed. Claiming that the removal was illegal, and that he continued to hold the office, the relator instituted this proceeding to determine his right to the salary alleged to be due.

*H. W. Moore,* for the plaintiff and relator.

Chapter 59, Laws 1905, providing for the removal of a certain class of state officers, is void as authorizing the removal without due process of law, there being no provision for notice and hearing. An act allowing an officer having a fixed term to be removed without an opportunity to be heard is a nullity. (Coleman v. Glenn, 103 Ga., 458; Dullam v. Willson, 53 Mich., 392; Alderman, &c., v. Darrow, 13 Colo., 460; Benson v. People, 10 Colo. App., 176; State ex rel. v. St. Louis, 90 Mo., 19; Chase v. Hathaway, 14 Mass., 221; People ex rel. v. Brooklyn, 106 N. Y., 65; State v. Donovan, 89 Mo., 448; Andrews v. King, 77 Me., 231; Ham v. Board, 142 Mass., 90; Todd v. Dunlap, 99 Ky., 449; State ex rel. v. Sullivan, 58 O. St., 504; People ex rel. v. Com'rs., 103 N. Y., 370; People ex rel. v. McGuire, 27 App. Div., 593; People v. Jewett, 6 Cal., 291; Collins v. Tracy, 36 Tex., 546; Lease v. Freeman, 52 Kan., 750; Jacques v. Little (Kan.), 33 Pac., 106; State v. Hewitt (S. D.), 52 N. W., 975; Carter v. Durange, 16 Colo., 534; State v. Smith (Neb.), 52 N. W., 700; Biggs v. McBride, 17 Ore., 640; Carson v. Harrison, 113 Ind.,

434; 106 N. Y., 676; State ex rel. v. Hoglan, 64 O. St., 332.)

Under the constitution, a state officer can be removed only by impeachment. (Art. 3, Secs. 18 and 19; Nolan v. State ex rel., 118 Ala., 154; Brown v. Grover, 6 Bush., 1; Lowe v. Commonwealth, 3 Metc. (Ky.), 237; People ex rel. v. Harland, 17 App. Div., 165; *Ex parte* Hogg, 36 Tex., 14; Bunnells v. State, Walker (Miss.), 146; State v. Wiltz, 11 La. Ann., 439.) The act in question violates the constitutional provision that no person shall be deprived of life, liberty or property without due process of law. (Art. 1, Sec. 6.) And also that provision which denies the existence of absolute power over the lives, liberty and property of freemen. (Art. 1, Sec. 7.) The superintendent of a water division is a state officer. (Const., Art. 8, Sec. 2; R. R. Co. v. Mayor, 1 Hilton (N. Y.), 562; People ex rel. v. Hurlbut, 9 Am. Rep., 103.)

The rule that an officer is not removable without notice and hearing applies even to an officer unknown to the common law, but created by statute; and mandamus may be resorted to for the restoration of one unlawfully removed from a public office. (High on Mandamus (3d Ed.), Secs. 68, 69, and cases cited; Pratt v. Com'rs., 15 Utah, 1; Morton v. Broderick, 118 Cal., 474; Kipley v. Luthardt, 178 Ill., 525; Johnson v. Galveston, 11 Tex. App., 462; Hawke v. McAllister (Ariz.), 36 Pac., 170; State v. Callaham (N. D.), 61 N. W., 1025; Miles v. Stevenson, 80 Md., 358; Eastman v. Householder, 54 Kan., 63; Keough v. Board (Mass.), 31 N. E., 387; Delgado v. Chares (N. M.), 25 Pac., 948; Metsker v. Neally (Kan.), 21 Pac., 206; *Ex parte* Lusk, 82 Ala., 519; Comm. v. Gibbons, 196 Pa. St., 97; State ex rel. v. City, 107 La., 633; Sugden v. Partridge, 174 N. Y., 88; Thompson v. Troup, 74 Conn., 121; Schmulbach v. Speidel, 50 W. Va., 553; Akerman v. Board, 118 Ga., 334.) The relator alleges that he is occupying the office, thus presenting a stronger case than in the authorities cited, and entitles him to the warrant claimed. (As to who

are *de facto* officers counsel cited 48 Mo., 214; 52 Mo., 508; 81 Mo., 14.)

(On petition for rehearing.) Correctly defined, "state officers" are those having jurisdiction throughout the state. That has been the opinion of the Attorney General of the state. (Atty. Gen'l. Report, 1899-1902, p. 122.) The relator sitting as a member of the State Board of Control has jurisdiction throughout the state. If he is a state officer in one sense, it would seem that he should be so considered for all purposes. The superintendent is vested with authority to decide causes and to exercise powers appropriate to a court; and, therefore, he is to be regarded as a judicial officer of the state, and as such subject to removal only by impeachment.

The statute in question should be considered with reference to the principle that the common law will not be deemed abrogated by statute except where that results from the express language of the statute or from necessary implication. The law presumes that the Legislature did not intend any change over the common law other than that which is plainly specified and pronounced. Upon that principle it ought not to be held that the statute authorizes the removal of an officer without a hearing.

*W. E. Mullen,* Attorney General, for the respondent.

Mandamus is not the proper remedy to afford the relief demanded. Rev. Stat. 1899, Sec. 4213, defines the proceeding by *quo warranto,* and that proceeding is the only one in which the contested right of one to hold an office may be determined. (Mechem Pub. Off., Secs. 217, 478; McCrary on Elections, Sec. 388; People ex rel. v. Gotting, 133 N. Y., 569; 17 Ency. Pl. & Pr., 407, 408, 410; State v. Lynn (Neb.), 48 N. W., 881; 2 Spelling on Ex. Rem., Sec. 1778; People ex rel. v. Infant Assy., 10 L. R. A., 381; State ex rel. v. Barker (Ia.), 57 L. R. A., 244.)

The authority of the Legislature is supreme, except as controlled by the limitations imposed by the organic law.

(State ex rel. v. Henderson, 4 Wyo., 535.) And its authority over public officers is complete and absolute, subject to constitutional provisions or prohibitions. (Reals v. Smith, 8 Wyo., 170; Lee v. Board, 3 Wyo., 52.)

Section 18, Article 3, of the Constitution, prescribing the officers subject to impeachment, would seem by the use of the term "state officers" to refer to only those officers whose jurisdiction is general throughout the state, and who are heads of executive departments of the state government. (R. R. Co. v. Mayor, 1 Hilton (N. Y.), 562.) The jurisdiction of a superintendent of a water division is limited to his own division, and he is not the head of an executive department; but the State Engineer is the head of his department. He is not such an officer as is contemplated by Section 18. (State v. Hewitt, 3 S. D., 187; State v. Smith, 6 Wash., 496.) The reasons stated in writing by the Governor and filed with the Secretary of State constitute misconduct in office within the meaning of Section 19 of Article 3 of the Constitution. Misconduct, as the word is employed in that section, includes not only any wrongful official act, but also neglect, malfeasance, omission to perform any official duty, or conducting the office in a generally incompetent manner. Yoe v. Hoffman, 61 Kan., 265; State v. Stover, 113 Mo., 208; Miller v. Roby, 9 Neb., 471.)

A public office is not a contract, nor can it be regarded as the property of the incumbent. (Reals v. Smith, 8 Wyo., 159.) Notice to the officer and a hearing was not required, since the statute provided for none, and the Legislature had the power to pass such an act. (Williams v. Gloucester, 148 Mass., 256; People v. Carver, 5 Colo. App., 156; O'Dowd v. Boston, 149 Mass., 443; Conklin v. Cunningham, 7 N. M., 445; Trainor v. Board, 89 Mich., 162; Atty. Gen'l. v. Jochim, 99 Mich., 358; Trimble v. People, 19 Colo., 565; Peo v. Orr, 22 Colo., 142; State v. Burke, 8 Wash., 412.)

*T. S. Taliaferro,* as *amicus curiae.*

The constitution, while mentioning the office of Water Superintendent, leaves the appointment and provisions for

the office entirely to the Legislature. (Sec. 4, Article VIII.)

"The power of the executive and judicial departments is a grant, not a limitation, while the powers of the legislative department are absolute, except as restricted and limited by the constitution which the people have adopted." (State v. Henderson, 4 Wyo., 535.) "What the people may do by an original and new constitution, the Legislature may do with reference to public officers, except as restricted by constitutional provisions." "In general subject to constitutional provisions or prohibitions, the authority of the Legislature over public offices is complete and absolute." (Reals v. Smith, 8 Wyo., 170, 171; Lee v. Board of Commissioners, 3 Wyo., 52.) The constitution, therefore, invests the Legislature with absolute control and regulation over the office of Water Superintendent. The Legislature fixed and may shorten or lengthen the term of office as they see fit, and there is certainly nothing in the constitution which prohibits them from providing for the removal of appointees who prove themselves unfit. (People v. Squires, 14 Cal., 13; *Ex parte* Wiley, 54 Ala., 226.)

Not only is there no limitation in the constitution upon the power of the Legislature to pass a law providing for the removal of public officers, such as Water Superintendent, but on the contrary the constitution especially provides for and authorizes such a law.

The words "Governor and other state and judicial officers" in Section 18 of Article 3 clearly include only those state officers of the same class and character as the Governor—that is, elective and not appointive state officers. The words "other state officers" include only officers *ejusdem generis* as the Governor, namely, those elective state officers enumerated in Section 11, Article IV, of the Constitution. (People v. Dolan, 5 Wyo., 253, and cases cited; State v. Clarke, 21 Nevada, 333; State v. Krueger, 134 Mo., 262.)

We refrain from quoting further authority, for the Supreme Courts of two states have already decided this question in construing identical provisions in their respective con-

stitutions. (State v. Hewitt, 3 S. D., 187; State v. Smith, 6 Wash., 496.)

To give any other interpretation to Section 18 would not only render absolutely nugatory Section 19, but would also make meaningless the clause "unless sooner removed by law" in Section 4 (2d) of Article 6 of the Constitution. (Trimble v. People, 19 Colo., 187.)

This Section 4 (2d) of Article 6 containing the above clause has been held to include appointive state officers, such as Water Superintendent. (State v. Henderson, 4 Wyo., 535.) It is a well known rule of construction, announced by this court in reference to the constitution in Board of Commissioners v. Burns, 3 Wyo., 691, that, "The whole instrument must be examined with a view to arriving at the true intent of each part. Effect must be given, if possible, to the whole instrument and to every section and clause." Both reason and authority point to the same conclusion, that it was never intended to place any constitutional limitations upon the power of the Legislature to provide for the removal of appointive state officers. Many of these officers hold their office for only a term of two years. The Legislature might have made the term of the Water Superintendent two years. If appointive state officers holding office for terms of two years could only be removed by impeachment, there would be no way of removing them at all before the expiration of their terms, no matter how incompetent and corrupt they might prove themselves, for the impeaching body sits but once in two years.

The causes for removal stated in the statute and the reason set forth for Mr. Hamilton's removal by Governor Brooks are well within the words of Section 19, Article 3, of the Constitution, "misconduct or malfeasance in office." Misconduct as used in Section 19 includes not only any wrongful act, but also any neglect, nonfeasance or omission to perform an official duty, or the conducting of an office in a generally incompetent manner. (Yoe v. Hoffman, 61 Kan., 265; State v. Slover, 113 Mo., 208; Miller v. Roby, 9 Neb., 471.)

The fact that Mr. Hamilton was occupying the office of Water Superintendent at the time of the passage of Chapter 59, Laws of 1905, does not affect the right of the Governor to remove him. (People ex rel. v. Whitlock, 92 N. Y., 197; Williams v. Gloucester, 148 Mass., 256.)

The principle is firmly established in the jurisprudence of this country that a public office is not a contract either express or implied, nor a grant, nor to be regarded as the property of the incumbent. (Reals v. Smith, 8 Wyo., 159; Atty. Gen'l. v. Jochim, 99 Mich., 358; Lee v. Board, 3 Wyo., 52.)

No notice or hearing was necessary, since the removal is authorized for a cause "deemed sufficient" by the Governor. (State ex rel. v. Doherty, 25 La. Ann., 119; People v. Carver, 5 Colo. App., 156; O'Dowd v. Boston, 149 Mass., 443; Conklin v. Cunningham, 7 N. M., 445; Trainor v. Board, 89 Mich., 162; *Ex parte* Wiley, 54 Ala., 226.)

The only restraint upon the discretion of the Governor, made by the law of 1905, is the provision that reason for such removal shall be filed in the office of the Secretary of State in writing, subject to inspection by any person interested. This is entirely different from statutes providing that the Governor may remove for cause or for sufficient cause. (State v. Hewitt, *supra;* Trimble v. People, 19 Colo., 187; People v. Martin, 19 Colo., 565; People v. Orr, 22 Colo., 142; State v. Cheetham, 19 Wash., 330.) Any reasonable construction will be resorted to in order to sustain an act of the Legislature. (Barkwell v. Chatterton, 4 Wyo., 307.)

BEARD, JUSTICE.

This is a proceeding commenced in this court, as a court of original jurisdiction, by the relator against the State Auditor, praying for a writ of mandamus to compel the Auditor to allow, draw and sign a warrant on the State Treasurer for one hundred dollars, being the amount of the salary claimed by the relator as Superintendent of Water Division No. 4 of the State of Wyoming for the month of March, 1905. The relator presented his petition to Chief

Justice Potter, and an alternative writ was issued by him and made returnable to this court. The facts necessary to an understanding of the case, briefly stated, are as follows: On February 27, 1903, the relator was appointed by the then Governor of the state, superintendent of said water division for the term of four years, which appointment was confirmed by the State Senate; he qualified, a commission was issued to him and he entered upon the discharge of the duties of the office and continued so to do until March 16, 1905, when he was removed from said office by the present Governor of the state; the cause for such removal, as stated by the Governor in writing and filed in the office of the Secretary of State, being as follows:

"Proof of incompetency of O. A. Hamilton, Division Superintendent. Referring to tabulation of proofs taken in adjudicating rights on Green River and tributaries: 330 proofs submitted—of these 105 show no errors on face of tabulation, but of the 105 several petitions for corrections of descriptions of lands irrigated have been received and granted. Eighteen petitions for rehearing were received altogether from this work and fully 200 would have been received if the errors had not been discovered in the office of the Board of Control prior to the issuance of final certificates of appropriation. The errors thus corrected by the Board of Control were of different character. Eighty-three per cent were in wrong descriptions of irrigated lands; eleven per cent in the date of priority; four per cent in the names of appropriators, and two per cent in unintelligible writing, miscalculations, etc. Owing to the necessity for reviewing the entire work, the State Engineer and Superintendent of Water Division No. 1 went into the field in pursuance of an order of the Board of Control reopening the decree for correction. The entire matter was gone over and many more corrections were made than were brought to the attention of the board through correspondence. This work has cost the state over $200 in expense alone, besides the time of the administrative officers. It has cost the people much more in

time and money. Similar errors have been found in all other proofs submitted by Mr. Hamilton. During the season of 1904 he spent a large part of his time mining along the Sweetwater River. He has never performed his part in the systematizing of the records pertaining to his division and the card index belonging to that division is in the office of the board at Cheyenne.

"The photographic reproduction of a page of the Green River tabulation (a part of the records of the office of the Board of Control) is attached hereto. It is typical of the remainder of the tabulation."

The photograph referred to was not attached to the pleadings nor offered in evidence.

On March 18, 1905, the Governor appointed a successor to relator, until the convening of the next session of the Senate, who immediately qualified. The relator was notified of his removal, but he was not notified to appear and show cause why he should not be removed, nor was he given a hearing, upon charges, before he was removed. He testifies, however, that about February 20, 1905, he had a conversation with the Governor about his resigning and that he concluded not to resign, and that the Governor then told him that if he did not resign by March 15, he would be removed, and that the Governor gave as his reasons for such contemplated removal that relator's reports were erroneous, and that the State Engineer and relator could not agree and that it was not a good plan to have a board where its members were at loggerheads.

The claims of the relator are:

1. That he is a state officer appointed for a definite term and, therefore, cannot be removed from office except by impeachment.

2. That Chapter 59, Session Laws of 1905, giving the Governor power to remove from office appointive officers is unconstitutional.

3. That if said act is constitutional, such removal could not be made by the Governor without charges being pre-

ferred, notice to relator and a hearing, and that the attempted removal by the Governor was null and void.

On behalf of respondent, the Attorney General objects to the consideration of the questions involved on the ground that the title to the office is involved and that mandamus is not the proper remedy, and cites Mechem on Public Officers, Sec. 217, where the rule is stated as follows: "It is well settled that mandamus will not lie to try the title to an office, or to compel admission to it, or to obtain possession of it, or to oust an usurper from it. In all these cases the party must resort to his remedy by quo warranto." Numerous authorities are cited, which, however, add nothing to the above statement. But the present proceeding is not brought against the appointee to succeed the relator, nor is the prayer to restore the relator to office. It may be conceded that *quo warranto* is the proper remedy to try the title to office between contending parties. Mandamus would be unfair as well as inadequate, for the reason that it would be an attempt to secure an adjudication with but one of the parties claiming the office before the court. An examination of the prayer of the petition, if the facts stated warrant the relief prayed for, is frequently the best test of the nature of an action or proceeding, and that test applied to this case indicates that the purpose of the proceeding is not to determine the right to the office as between the relator and the appointee, but to compel the Auditor to issue a warrant. The relator claims to be in office and entitled to the salary, and that it is the duty of the Auditor to issue a warrant therefor; while the respondent alleges that the relator has been removed from office and is not entitled to its emoluments and that he has no duty to perform. The court will go no further in its decision than is requisite to determine the precise question presented by the issues. A decision in favor of the relator could mean no more than that he is a *de facto* incumbent of the office and entitled to the emoluments thereof. It could not adjudicate as between relator and appointee as to which has the better title

to the office. It could not declare the relator's title unassailable.

On the other hand, a decision adverse to the relator would doubtless mean that he had been effectively removed, and has no right to the office. But there is nothing unfair to him in deciding the question, for his claims have been fully presented and argued to the court. In either case the rights of the appointee, who is not a party, are not involved, and the case is not one to try the title to an office between contesting claimants. The right of the court to entertain mandamus proceedings for the determination of the questions properly presented, notwithstanding the incidental inclusion of other matters more fitly presented by a proceeding in *quo warranto,* has been upheld. In Morton v. Broderick, 118 Cal., 474 (50 Pac., 644), the Supreme Court of California said: "An application for a writ of mandate to try title to office would be answered at once by the suggestion that the law affords adequate process and procedure by an action of *quo warranto* or usurpation of office. But when the writ is invoked to enforce a specific duty, and remedies at law are inadequate, aid will not be refused merely because occupancy, or incumbency, or title is incidentally involved. It will act under such circumstances, as does equity, and inquire into and determine rights so far as, but no further than, may be necessary to the granting of the relief sought." (See also High on Ex. Leg. Rem. (3d Ed.), Sec. 108.) We are, therefore, of the opinion that we are not going outside of established legal rules in entertaining the application to the extent merely of determining whether or not the relator is entitled to the relief prayed for. The relator is entitled to the salary if he is the officer he claims to be; and he is such officer unless he has been removed. Therefore, the legality of the Governor's action in that respect is the only question to be decided.

We will first consider the relator's contention that he is a state officer and cannot be removed except by impeachment. The constitutional provisions with regard to his appoint-

ment are found in Article 8 of the Constitution, which provides that the Legislature shall by law divide the state into four water divisions, and provides for the appointment of superintendents thereof; that there shall be a State Engineer, who shall be president of the Board of Control, and shall have general supervision of the waters of the state and of the officers connected with its distribution. It further provides for a Board of Control to be composed of the State Engineer and the superintendents of the water divisions. In pursuance of these constitutional provisions, the First State Legislature (S. L. 1890-91, Ch. 8; R. S. 1899, Secs. 848, 849, 850) divided the state into four water divisions and provided for the appointment of a superintendent for each division by the Governor, with the consent of the Senate, who should hold his office for four years, or until his successor is appointed and shall have qualified; and providing that he shall have general control over the Water Commissioners of the several districts within his division, and shall under the general supervision of the State Engineer execute the laws relative to the distribution of water in accordance with the rights of priority of appropriation, and perform such other functions as may be assigned to him by the State Engineer. It was under these provisions that the relator was appointed.

The constitutional provisions with regard to the impeachment and removal of officers are contained in Sections 18 and 19 of Article 3, and are as follows: "Sec. 18. The Governor and other state and judicial officers except Justices of the Peace, shall be liable to impeachment for high crimes and misdemeanors, or malfeasance in office. Sec. 19. All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law." The Legislature passed an act (S. L., Ch. 59, approved February 20, 1905) as follows: "Any officer or commissioner of the State of Wyoming who shall hold his office or commission by virtue of appointment thereto by the Governor, or by the Governor

by and with the advice and consent of the senate, may be removed by the Governor from such office or commission for maladministration in office, breach of good behavior, wilful neglect of duty, extortion, habitual drunkenness, or any other cause deemed by the Governor to justify and warrant such removal; Provided, Reason for such removal shall be filed in the office of the Secretary of State in writing, subject to inspection by any person interested." It was under the power conferred by this act that the relator was removed.

It will be observed that the causes for impeachment are, "For high crimes and misdemeanors, or malfeasance in office," including only criminal conduct or positive wrong doing, while officers not liable to impeachment may be removed for "misconduct or malfeasance in office," thus very greatly extending the causes for removal authorized to be provided for by law. We are very clearly of the opinion that it was not the intention of the framers of our Constitution to require that the jurisdiction of the high court of impeachment should be invoked to try and remove minor and subordinate officers, especially as the term of office of many of such officers would expire by limitation during the session of the Legislature at which they could be impeached, and, again, that court would have no jurisdiction in cases of "misconduct" not amounting to a high crime or misdemeanor, or malfeasance in office. We are strongly inclined to the opinion, without deciding the point, that the officers liable to impeachment are the Governor and other state officers mentioned in Section 11, Article 4, of the Constitution, which does not include the office in question. Certainly, and it has generally been so considered, that only the superior executive and judicial officers of a state are subject to impeachment, and we have found no case where an officer holding by appointment, or an inferior officer of any kind, has been held subject to impeachment. On the other hand, it has been held that such officers are not so subject. (15 A. & E. Enc. (2d Ed.), p. 1065; State ex rel.

Hitchcock v. Hewitt, 3 S. D., 187; State ex rel. Stearnes v. Smith, 6 Wash., 496 (33 Pac., 974); State ex rel. Mc-Greavy v. Burke, 8 Wash., 412 (36 Pac., 281.)

The constitutional provisions of these states are similar to ours. The Supreme Court of South Dakota says: "The constitutions of many of the states contain the same language to our own, defining what officers are subject to impeachment, but, so far as we have observed, such language has not been taken to include officers who hold by appointment either by the Governor or some supervising board, authorized to make such selection and appointment." The Supreme Court of Washington has given us a rational view of the subject. "As a general rule, the term 'state officer' is only applied to those superior executive officers who constitute the heads of the executive departments of a state." Again: "The second section provides that the Governor and other state and judicial officers shall be liable to impeachment; and the third section provides that all officers not liable to impeachment shall be subject to removal for malfeasance in office, in such manner as may be provided by law. If 'state officers' should be taken to include all officers who have to do with the state's business, officers of all grades would be subject to removal by impeachment only, and there would be no use for Section 3. But it is a matter of general, as well as legal, knowledge that impeachments do not lie against any but the superior officers of a state, and that it is usually limited to the executive and judiciary, and this was the intention of this article." (Cases *supra*.)

Applying the reasoning of the Washington court, an interpretation of Section 18, Article 3, of the Constitution, which would make it include minor and subordinate officers, would render Section 19 meaningless and superfluous. There is no doubt in our minds but that the superintendent of a water division is such an officer as, under Section 19, Article 3, of the Constitution, may be removed in the manner provided by law.

It is argued that the act under consideration (Ch. 59, S. L. 1905) contravenes the bill of rights providing that no

person shall be deprived of life, liberty or property without due process of law. But the notion that there may exist a property right in a public office is not generally accepted. "The incumbent of an office has not, under our system of government, any property in it. His right to exercise it is not based upon any contract or grant. It is conferred on him as a public trust to be exercised for the benefit of the public. Such salary as may be attached to it is not given because of any duty on the part of the public to do so, but to enable the incumbent the better to perform the duties of his office by the more exclusive devotion of his time thereto." (State ex rel. Attorney General v. Hawkins, 44 O. St., 98-109.) "A public office is not to be regarded as the property of the incumbent." (Reals, County Treasurer, v. Smith, 8 Wyo., 159.) "Subject to constitutional provisions or prohibitions, the authority of the Legislature over public offices is complete and absolute." (Ibid. Lee v. Board of Commissioners, 3 Wyo., 52.) It is well settled in this state that the bill of rights does not interfere with legislative control over public offices, and that such control is complete within the express constitutional limits. The Legislature, however, under the provisions of Section 19, Article 3, of the Constitution, did have express warrant for the passage of an act for the removal of officers not subject to impeachment, and the method of procedure in effecting such removal is not limited by any other constitutional provision. (Attorney General v. Jachim, 99 Mich., 358.)

The only question that remains to be considered is the contention of counsel for relator that relator could not be removed, lawfully, without charges being preferred against him, notice of the time and place of a hearing upon such charges, and an opportunity to make defense. Counsel for relator has cited many authorities on this proposition and which sustain the rule as laid down in Mechem on Public Officers, Sec. 454, which is as follows: "Where the appointment or election is made for a definite term or during good behavior, and the removal is to be for cause, it is now

clearly established by the great weight of authority that the power of removal cannot, except by clear statutory authority, be exercised without notice and hearing, but that the existence of the cause, for which the power is to be exercised, must first be determined after notice has been given to the officer of the charges made against him, and he has been given an opportunity to be heard in his defense." In the two leading cases cited by counsel for the relator (Coleman v. Glenn, 103 Ga., 458, and Dullam v. Wilson, 53 Mich., 392), the principle is recognized that where the statute so provides the removal may be made without notice. In the Georgia case on page 460 the writer of the opinion quotes with approval the above quotation from Mechem, and in the Michigan case on page 402 the court says: "Unless it is the manifest intention of the section under consideration that the proceedings should be *ex parte* as well as summary, a removal without charges, notice and an opportunity for defense cannot be upheld."

It is true that the rule has been sometimes stated without the qualifying exception in the case of "clear statutory authority." But such statements are evolved from cases where the question did not arise. The later Michigan cases show that officers may be removed without notice where the statute gives such authority and where there is no constitutional provision prohibiting it. (Halgren v. Campbell, 82 Mich., 255; People v. Stuart, 74 Mich., 411; Trainor v. Board of County Auditors, 89 Mich., 162; see also Trimble v. People, 19 Colo., 187; People v. Whittock, 92 N. Y., 191; State v. McGarry, 21 Wis., 496; State v. Cheetam, 19 Wash., 330 (53 Pac., 349.) From an examination of the authorities, therefore, it seems correct to say that when the Legislature has conferred power on the Governor to remove an appointive officer having a definite term, and the statute does not provide the procedure, it will not be presumed that such removal may be made without notice and a hearing; but if the authority is expressly given to proceed summarily, no such notice is necessary. If, therefore, the statute under which the removal was made in this case had closed at the

semi-colon before the proviso, it might be a question whether notice to the officer and a hearing on charges might not be required. But the Legislature having declared that removals may be made, proceeds to prescribe the method or the conditions under which such removals may be made. Having conferred the power upon the Governor in language which is plenary, it adds: "Provided, Reason for such removal shall be filed in the office of the Secretary of State in writing, subject to inspection by any person interested," thereby declaring the express conditions and limitations under which the Governor may act. Having entered upon the realm of limitation, 'the enumeration of one condition precludes the idea that there should be others not expressed. *Expressio unius est exclusio alterius.* To our minds the language of the proviso is inconsistent with the idea of a hearing. The sole restraint upon the action of the Governor is the filing of his reasons for the removal, and the consequent check of public opinion. In defining the duties of the Governor, the Constitution (Sec. 5, Art. 4) provides: "He shall expedite all such measures as may be resolved upon by the Legislature and he shall take care that the laws be faithfully executed." Being vested with the power to appoint many subordinate officers for whose conduct he is, in a measure at least, held responsible to the people, it was no doubt deemed wise by the Legislature to also invest him with the power of summary removal of such appointive officers for misconduct in office, whatever might be the source of his information and knowledge of such misconduct, so long as in his judgment it existed; and that the filing of his reasons was a sufficient guaranty of his good faith, and that the power would not be abused, but would be exercised only when a faithful execution of the laws required it. It is argued that this lodges an arbitrary and unsafe power in the executive. But it may be a question whether the evils that might arise from such a condition would be greater than those growing out of maladministration, or misconduct in office, and the delays to be anticipated from protracted litigation under more cumbersome methods. At any rate,

the question is one for the Legislature and not for the courts. The law can be repealed if proven to be vicious. Its wisdom does not concern us, for our duty is simply to declare the law as we find it to be. There is no claim advanced by counsel for the relator that the reasons assigned by the governor are not such as, if true, would constitute maladministration or misconduct in office, and they seem to us to be well within those terms. (State ex rel. Tilley v. Slover, 113 Mo., 208; Yoe v. Hoffman, 61 Kan., 265 (59 Pac., 351); Cent Dict.)

We conclude, therefore:

1. That the superintendent of a water division is one of those officers mentioned in Section 19, Article 3, of the Constitution, and that the Legislature had the power to provide by law for the removal of such an officer in a summary manner and without notice or a hearing, for one or more of the causes mentioned in said section.

2. That it was the intention of the Legislature that removals from office provided for in Chapter 59, Session Laws of 1905, might be made summarily and without notice or hearing.

3. That the removal of the relator from office by the Governor was in accordance with law, and that after such removal the relator was not entitled to the salary of said office and that the respondent was justified in refusing to issue a warrant to him for the same.

It is, therefore, considered and adjudged by the court that the writ of mandamus prayed for by the relator be and the same hereby is denied. It is further ordered and adjudged that the relator pay the costs of this action.    *Writ denied.*

PARMELEE, District Judge, concurs.

POTTER, C. J., did not sit.

### ON PETITION FOR REHEARING.

BEARD, JUSTICE.

A petition for rehearing has been filed by the relator in this case, accompanied by a brief of his counsel in support of the same.

The only point presented in the brief not discussed in the original brief and argument is, that the relator is a judicial officer and hence comes within the terms of Section 18, Article 3, of the Constitution, and that he could be removed by impeachment only. We think this contention has been fully answered in the negative by this court in Farm Investment Co. v. Carpenter, 9 Wyo., 110-143, where, speaking of the Board of Control, the following language is used: "The board, it is true, acts judicially, but the power exercised is *quasi* judicial only, and such as under proper circumstances may appropriately be conferred upon executive officers or boards. The jurisdiction bears some resemblance to that of the land department of the government concerning the disposal of public lands. That department is not regarded as a court, or as a branch of the judicial department; nor is its jurisdiction upheld upon the basis of any authority residing in Congress to establish courts. It is considered as an administrative department, and its powers are held to be *quasi* judicial only."

The other points presented by the petition were fully presented, argued and considered upon the hearing, and upon re-examination we discover no reason to change the former opinion.                              *Rehearing denied.*

PARMELEE, District Judge, concurs.