The STATE of Wyoming ex rel. George
O. PEARSON, Plaintiff,

v.

Clifford P. HANSEN and Roy V. Cooper,
Defendants.

No. 3418.

Supreme Court of Wyoming.

May 12, 1965.

Hickey, Rooney & Walton, Cheyenne, Henry A. Burgess, Sheridan, for plaintiff.

John F. Raper, Atty. Gen., Dean W. Borthwick, Deputy Atty. Gen., Sterling A. Case, Asst. Atty. Gen., Cheyenne, for defendants.

Before PARKER, C. J., and HARNS-BERGER, GRAY and McINTYRE, JJ.

GRAY, Justice.

On May 15, 1962, plaintiff George O. Pearson, having been appointed by Acting Governor Jack R. Gage, became the duly qualified Adjutant General of the Wyoming National Guard and continued to hold and occupy such office until November 25, 1964. On that date Governor Clifford P. Hansen, successor to Acting Governor Gage, undertook to remove plaintiff from the office of Adjutant General for cause and to assign to defendant Roy E. Cooper, a Brigadier General in the guard, the additional duties of Acting Adjutant General. In keeping with the Governor's command, defendant Cooper issued an order, stating in substance that he had assumed the duties assigned and that plaintiff had been relieved. Claiming that the action taken by the Governor and by defendant Cooper was wrongful, plaintiff invoked the original jurisdiction of this court by the filing of a complaint, seeking redress for the claimed deprivation of his rights to the office. The action, of course, involves important public officials of this State, and while the Attorney General, representing the defendants, made a direct attack upon the sufficiency of the complaint to state a claim, no direct attack has been made upon the propriety of commencing the action here pursuant to Art. 5, § 3 of the Wyoming Constitution, Rule 8(a),

Wyoming Rules of Civil Procedure, and Rule 16 of this court. In the meantime the pleadings have been supplemented in keeping with Rule 56, W.R.C.P., and both parties have moved for summary judgment. Accordingly, we proceed to a determination of the questions necessary to be considered for disposition of the case.

In doing so, however, and in order that our decision in this case be not misunderstood, care will be taken to state clearly what we conceive to be the real issues before us. It is not our function to explore collateral or feigned issues. We are impelled to say this for the reason that we have encountered some difficulty in eliminating from plaintiff's complaint averments that are immaterial and unrelated to the scope of the claim stated. As we analyze plaintiff's complaint—giving to it all of the liberality of the relaxed rules of pleading as prescribed by the Wyoming Rules of Civil Procedure—it simply raises the ultimate issue of whether plaintiff or the defendant Cooper is entitled to hold and occupy the office of Adjutant General. In other words, it is an action to try title to a public office. Necessarily, this limits the matters to be considered. The appropriate remedy is to be found in the statutes relating to an action in the nature of quo warranto. Section 1–896 et seq., W.S.1957; State ex rel. Hamilton v. Grant, 14 Wyo. 41, 81 P. 795, 796–797, 1 L.R.A.,N.S., 588, 116 Am.St.Rep. 982, rehearing denied 82 P. 2. Furthermore we think it is an adequate remedy. Being both appropriate and adequate, it furnishes the exclusive remedy. Crawford v. City of Sheridan, Wyo., 392 P.2d 519, 520.

Plaintiff apparently does not share that view as he also asks for relief by way of a coercive writ of mandamus against the Governor. To sustain his position reliance is placed on Cowan v. State ex rel. Scherck, 57 Wyo. 309, 116 P.2d 854, 856, 136 A.L.R. 1330. State ex rel. Hamilton v. Grant, supra, might also have been cited. While it is true that both were actions in mandamus, we would point out that the question of title to office was incidental to the particular relief sought. As stated above, that is not this case. We would further point out that the relief requested in Cowan and State ex rel. Hamilton concerned duties clearly ministerial. We are in doubt that this is the situation here, but in any event we would not be inclined to grant such relief under the circumstances of this case and the request for mandamus is therefore denied. Even though the Governor exceeded his authority in the premises, we are persuaded that he did so in good faith in reliance upon his advisers. It would be a bold and unjustified assumption on our part to proceed on the basis that the Governor will not take meticulous care to observe the law relating to his power of removal, as interpreted and laid down by this court. State ex rel. Irvine v. Brooks, 14 Wyo. 393, 84 P. 488, 491, 6 L.R.A.,N.S., 750, 7 Ann.Cas. 1108. Perhaps we should also make clear that nothing in the record indicates that the defendant Cooper in assuming the duties of Adjutant General and occupying the office has done so in bad faith. He has simply carried out the command of the Governor as Commander in Chief of the Wyoming National Guard.

Neither will we make inquiry into the charges assigned by the Governor as reasons for removal of plaintiff from the office claimed. That is rendered unnecessary and would be improper under the view we take of the case. As we said above, the precise and paramount question framed by the issues is the right to a public office, and that in turn is dependent upon whether or not the Governor invoked the proper and lawful procedure. This simply involves questions of law.

Under the statute the sole power of appointment of the Adjutant General is vested in the Governor. Section 19–28, W.S.1957. As a general rule such power carries with it the right of removal. Nevertheless, the power may be limited by provisions of the constitution or statutes. 67 C.J.S. Officers § 59b(2), p. 244. The provision of the Wyoming Constitution pertinent

to the question is contained in Art. 3, § 19, and states as follows:

"All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law."

In keeping therewith the legislature originally delegated certain powers of removal to the Governor. Section 9–19, W.S.1957, provides:

"Any officer or commissioner of the State of Wyoming who shall hold his office or commission by virtue of appointment thereto by the governor, or by the governor by and with the advice and consent of the senate, may be removed by the governor from such office or commission for maladministration in office, breach of good behavior, wilful neglect of duty, extortion, habitual drunkenness, or any other cause deemed sufficient by the governor to justify and warrant such removal; provided, reason for such removal shall be filed in the office of the secretary of state in writing, subject to inspection by any person interested."

It should be noted that the foregoing provisions were enacted by the legislature in the year 1905 and have not since been amended. Concededly the Governor chose to follow the foregoing procedure and relies upon those provisions to support the action taken.

On the other hand, the plaintiff contends that such provisions are not applicable when an Adjutant General is involved and relies upon § 19–28, W.S.1957, which provides in part:

"The governor shall be commander-in-chief of the Wyoming national guard * * * and he shall appoint the adjutant general to serve for a period as prescribed for all other officers in this chapter, who shall be chief of staff; * * *"

The companion statute is § 19–56, W.S. 1957, and provides in part:

"All officers of the national guard of the State of Wyoming shall be appoint-ed by the governor * * * All officers now appointed in the national guard of the State of Wyoming or who shall hereafter be appointed shall hold their positions until they shall have reached the age of sixty-four years (64 years) unless retired prior to that time by reason of resignation, disability, or for cause to be determined by a court martial or efficiency board, legally convened for that purpose and to be legally convened as herein provided. Such court martial or efficiency board must be convened and act under the same provisions as a like body of the regular army. * * *"

Section 19–28 in its present form was adopted in the year 1939. For several years prior thereto the tenure of the Adjutant General corresponded to that of other important officers of the State, including the Governor, in that the Adjutant General was "to serve for a period of four years or until his successor is duly qualified." Ch. 163, § 1, S.L. of Wyoming, 1925. No doubt there are those who may question the wisdom of tying the hands of a succeeding Commander in Chief of the militia in the selection of his principal officer in whom he should have complete trust and confidence. Nevertheless, those considerations are not before us. It is the legislature that determines such policy. Absent conflict with the constitution or absent some other infirmity, it is our duty to take the statutory law as we find it and to see to it that the powers conferred upon public officials are not abused. State ex rel. Richmond v. District Court of Second Judicial Dist. within and for Albany County, 45 Wyo. 29, 14 P.2d 673, 684.

Returning to the matter of limitation upon the Governor's power of removal, it can be seen that the foregoing statutes are of that nature and without question circumscribe removal during tenure of the officer involved. Just cause is the touchstone to the exercise of the power. That seems to be accepted by all parties. However, the dispute here comes about as to which forum,

the Governor or a military court, is endowed with jurisdiction to entertain and act upon the sufficiency of the charges as constituting such cause.

■ To aid us in solving this question we first turn to § 9–19. It is clear from the language used that originally it applied generally to all officials of the State appointed by the Governor. Whether the Adjutant General, prior to 1939, fell within that class we need not decide. We shall assume that he did. Notwithstanding it is just as clear that in the year 1939 the office of Adjutant General was selected by the legislature for special treatment in the matter of tenure and removal from office and provision was made for those matters in § 19–56. The right of the legislature so to do under the constitution has not been challenged. Consequently we have no alternative but to treat it as a special statute. The existence of the statute "is conclusive evidence of the justice, propriety and policy of its passage." Mau v. Stoner, 14 Wyo. 183, 83 P. 218, 222. See also Fugate v. Mayor and City Council of Town of Buffalo, Wyo., 348 P.2d 76, 83, 97 A.L.R.2d 243. Also, as stated in Mau, at 83 P. 221:

"* * * It is a general rule of statutory construction that where a special statute is later than a general statute relating to the same subject, the enactment operates necessarily to restrict the effect of the general act, from which it differs. Sutherland on Statutory Construction, § 158. We think this is the condition in regard to the statutes here under consideration. * * *"

■ Defendants are not oblivious to the rule but argue that the intent of § 19–56 was to restrict the Governor's powers only during the time that the Adjutant General was wearing a suit of armor in performance of strictly military affairs. We find no merit in that. The statute clearly and unequivocally states, "cause to be determined by a court martial or efficiency board." We must assume that the legislature had the removal power of the Governor in mind when it enacted the special provision relating to the Adjutant General and we are confident that had the legislature intended to engraft such an exception upon the language used, it would have done so.

■ It is further suggested by the defendants that the enactment of § 19–56 was an exercise in futility for the reason that it is impossible to convene a general courts-martial under the laws of this state. We cannot, of course, indulge in any such presumption and the burden is on the defendants to sustain their position. We think they have not met the burden. In the first instance, Art. 17, § 2 of the constitution provides in part the "discipline of the militia to conform as nearly *as practicable* to the regulations for the government of the armies of the United States." (Emphasis supplied.) In keeping with that mandate the legislature enacted § 19–70, W.S.1957, which provides:

"The military courts of this state shall consist of the same courts as is [are] provided for the United States army, and such courts shall be convened, conducted and have the same jurisdiction as is prescribed for the United States army subject, however to such limitations as may be prescribed by congress for the national guard not in the service of the United States."

We have heretofore set forth the reference to a military court contained in § 19–56. Where practicable the legislature is empowered to prescribe for the Wyoming National Guard the rules and standards pertaining to military courts of the United States Army. Art. 17, § 2, Wyoming Constitution; James v. Walker, 141 Ky. 88, 132 S.W. 149, rehearing denied 147 Ky. 646, 144 S.W. 744. It has done so and we are satisfied that the statute is sufficiently definite and complete to accomplish the legislative purpose. Thus we find no merit in the argument that the legislature was required to adopt a separate code of military justice.

The arguments addressed to the organization and procedures of a general courts-

martial within the guard as presently constituted, to our thinking, are premature. No effort has yet been made to organize such a court. We should not be asked to speculate on this matter and perhaps nothing further should be said. However, in view of the possibility that the Governor, in the exercise of his discretion, may decide to convene such a court it might not be amiss to comment, to some extent, upon those matters that appear to be important in establishing the court.

One obstacle is said to be that the Governor, being the accuser, is without authority to convene such a court. The argument is premised upon Art. 22 of the Uniform Code of Military Justice enacted by Congress in 1956, 10 U.S.C.A. § 822 (1959). The officers authorized to convene a general courts-martial are there enumerated. No mention is made of the Commander in Chief of a State National Guard, but subsection (b) provides in part that "If any such commanding officer is an accuser, the court shall be convened by superior competent authority." There is, of course, no officer in the guard superior in command to the Governor. However, this argument would seem to overlook the provisions of 32 U.S.C.A. § 327(a) (1959), which in part provides:

"In the National Guard not in Federal service, general courts-martial may be convened * * * by the governor of a State * ° * * "

Presently the guard is not in Federal service. Thus it would appear that § 327(a) is a "limitation" contemplated by § 19–70, W.S.1957. It will be noted that § 327(a) does not restrict the power of the Governor to convene a general courts-martial in any way. Again, we are confronted with a special statute covering the same subject matter as a general statute and we accept the special statute as controlling. We are not at liberty to read into § 327(a) the language of subsection (b) of § 822.

Neither do we think the convening of the court by the Governor would violate the spirit of the general provision. The record before us will not support an inference that the Governor is an "accuser" within the meaning of the term as defined in Art. 1(9), Uniform Code of Military Justice, 10 U.S.C.A. § 801 (1959) [1]. The Governor's affidavit discloses that the matter was first brought to his attention by a report from the office of the State Examiner. The record also discloses that the report made was a special report prompted by a complainant or complainants who as yet have not been identified. It also shows that from the time of the report the Governor's role was in keeping with what he assumed his duties and responsibilities to be under the provisions of § 9–19, W.S.1957, the general statute. In fact that seems to be conceded. Defendants' counsel in answer to interrogatories, state, "The Defendant Governor has no interest other than an official interest." Plaintiff's counsel also concede that the record does not show that the Governor acted "for reasons of bias, prejudice or personal animosity." Whatever the Governor signed in the discharge of his function under § 9–19 is not to be confused with the presentation of charges in a courts-martial proceeding. Consequently, we find no merit in the argument that the Governor is shown to be disqualified to convene the court. See Jackson v. McElroy, D.C.D.C., 163 F.Supp. 257, for an informative discussion of this question.

Neither do we find merit in the argument that personnel is not available in the Wyoming National Guard to serve as members of such a court. The record before us shows several high ranking commissioned officers on active duty with the guard, and while it is true that generally,

1. " 'Accuser' means a person who signs and swears to charges, any person who directs that charges nominally be signed and sworn to by another, and any oth-er person who has an interest other than an official interest in the prosecution of the accused."

under the provisions of Art. 25(d)(1), Uniform Code of Military Justice, 10 U.S.C.A. § 825 (1959), a member should not be junior in rank or grade to the accused, an exception is made when that cannot be "avoided." Here, of course, the Chief of Staff is the accused and the selection of junior members cannot be avoided.

■ With respect to the claimed inability of the Governor to detail a law officer, trial counsel, and defense counsel to staff the court under the standards set forth in Articles 26 and 27 of the Federal Code, 10 U.S.C.A. §§ 826 and 827 (1959), we point out that the argument is based upon the assumption that those officers must be certified to be qualified by the Judge Advocate General of an armed force of the United States. We do not so view the requirements. The argument overlooks the rule of reasonable construction laid down by our own constitution. According to the uncontroverted affidavit of Colonel Edward E. Murane, his present assignment is that of Staff Judge Advocate of the Wyoming National Guard. So far as we are advised, such office is comparable to that of a Judge Advocate General. As such, it would be Colonel Murane's duty, when so requested, to investigate the qualifications of officers suggested to him by the Governor for the above purposes and if satisfied, so to certify. It also appears from the record that officers are readily available for such detail.

■ Of course, another answer to this argument is also apparent. The primary purpose of Articles 26 and 27, 10 U.S.C.A. §§ 826 and 827 (1959), is to protect the accused. It is a right that may be waived. Plaintiff unqualifiedly states to this court that he will furnish his own counsel, which is his privilege. Art. 38(b), Uniform Code of Military Justice, 10 U.S.C.A. § 838 (1959). He also unqualifiedly states that he will not challenge the law officer and trial counsel duly detailed by the Governor to serve a general courts-martial. We have no reason to believe that plaintiff makes those representations in bad faith.

■ For the foregoing reasons we hold that the Governor exceeded his powers in undertaking to remove plaintiff from the office of Adjutant General of the Wyoming National Guard under the general power conferred by the provisions of § 9–19, W.S. 1957, and because of such fundamental error the defendant Cooper is a usurper unlawfully holding and occupying such office. The motion of plaintiff for summary judgment is granted and the clerk of this court is hereby instructed to enter upon the journals of this court an appropriate judgment, in keeping with the provisions of § 1–910, W.S.1957, ousting and excluding the defendant Cooper from the office of Adjutant General, acting or otherwise; defendant Cooper to pay costs to plaintiff.