THE PEOPLE, *ex relatione* FLEMING STEVENSON, Plaintiff in Error, *v.* JAMES M. HIGGINS, Defendant in Error.

### ERROR TO MORGAN.

It is as essential to an information that a proper venue be laid, as to an indictment or declaration.

The act creating the " Illinois State Hospital for the Insane," incorporated certain individuals named, and their successors in office, as trustees, and constituted them a body politic and corporate ; it also created the office of medical superintendent of said institution, and provided that the trustees should have charge of the general interests of the institution; that they should appoint the superintendent, assistant physician, and steward, and fix the amount of their salaries ; that the superintendent should be a skilful physician, and be appointed for the term of ten years ; and that he should be subject to removal only for infidelity to the trust reposed in him, or on account of incompetency.

*Held,* that the trustees had the right to remove the superintendent for the causes specified, whenever either of those causes existed.

Had the law been silent as to the tenure of the office, and on the subject of removal, the court would not hesitate to hold that the power of amotion was incidental to that of appointment, and that the trustees might remove the superintendent without assigning any specific cause, whenever in their judgment the best interests of the institution should require it.

In cases of this sort, where the law is silent as to the mode of proceeding, reference must be had to the nature of the case, to determine what course justice requires the removing power to pursue, in exercising its jurisdiction.

It was not necessary that the cause assigned for removal should be stated in the precise language of the statute; if it substantially embraced it, that was sufficient.

THESE proceedings in the court below, were had at October term, 1853, of the Morgan Circuit Court, WOODSON, Judge, presiding.

The facts will be found stated in the opinion of the court.

STUART & EDWARDS, and W. BROWN, for plaintiffs in error.

D. A. SMITH and M. McCONNEL, for defendant in error.

CATON, J. This information contains five counts. The second and third were dismissed by the State's attorney. To the first, fourth, and fifth a several demurrer was filed, which was sustained by the circuit court, and to reverse this decision the case is brought here. The first count was bad for the want of a proper venue. It does not state in what county the offence was committed. It is as essential to an information that a

proper venue be laid, as to a declaration or an indictment. By the fifth count but one question is presented, and that is, whether the trustees had the right to remove the superintendent for one of the grounds specified in the statute, to wit, for infidelity to the trust reposed in him, or incompetency to the discharge thereof? The fourth count presents the additional questions, whether he was removed for one of the reasons specified in the statute, and whether he was entitled to notice of the proceeding before the order for his removal was made, and whether the board proceeded properly in making the order.

The fifth count avers that at a meeting of the board of trustees, held on the 6th of June, 1853, the defendant was, by said trustees, removed from said office of medical superintendent of the hospital "on the ground and for the reason of his incompetency to the discharge of the duties thereof, and that at the time the order for said removal of said Higgins was made, he, the said Higgins, was present before the said board of trustees, and before the passage of the resolution as aforesaid was heard by said trustees in his defence, and then interposed no objection to the consideration of the question of said removal at that time, and did not ask or express any desire for the postponement of said resolution." These averments leave nothing open for consideration as to the regularity of the proceeding, save only the question of power.

The Illinois State Hospital for the insane was founded by the State, and is supported by its funds. The act creating the corporation incorporates certain individuals who are named as trustees, and their successors, a body politic and corporate. It creates the office of medical superintendent of said institution, and provides that the trustees "shall have charge of the general interests of the institution; they shall appoint the superintendent, assistant physician, and steward, and shall fix the amount of their salaries. The superintendent shall be a skilful physician, and shall be appointed for a term of ten years, during which time his salary shall not be reduced; he shall be subject to removal only for infidelity to the trust reposed in him, or incompetency to the discharge thereof; he shall be a married man, and with his family reside in the institution." The question is, upon whom is this right of removal for the specified causes conferred? The act does not say in express terms by whom it shall be exercised. By the defendant it is contended, that it can only be exercised by the legislature in their legislative capacity, or by the governor, the members of the legislature, and the members of this court, as visitors of the institution. We think it was conferred upon, and was designed to

The People, *ex rel.* Stevenson *v.* Higgins.

be exercised by the board of trustees. We think it very clear, that the power here conferred upon some body could have had no reference to the power of amotion as inherently residing in the legislature; for with or without that law they possess the power, in their legislative capacity, to remove the superintendent for any cause whatever, or even without cause, and the limitation of the right to remove for the two specified causes only, must have had reference to the power of amotion to be exercised by some other authority created by the act, in which the limitation is expressed. The last section of the act declares that "the governor, the judges of the supreme court, and members of the legislature shall be, *ex officio*, visitors of the institution." Admitting that the term visitors, as here used, is designed to be understood in its technical sense, and it is manifest that it was not designed to vest in the visitors all the powers incident to that office, when it is created by general terms or exists without restriction in eleemosynary institutions. The original and essential power of visitation is, by the express provision of the statute, vested in the trustees; they are authorized to make by-laws, rules, and regulations for the government of the institution, and its general interests are given them in charge; they are authorized to appoint its principal officers and to fix their salaries, and, in fine, are vested with the essential original powers of visitors. We cannot believe that the visitorial powers thus expressly vested in the board of trustees, were intended also to be vested in another and distinct body of men, under the general term visitors. It was the design of the legislature to confer upon the board of trustees the management of this institution, and to confer upon them all necessary powers for that management and control, as the most probable way of accomplishing, in the highest degree, the great and benevolent purposes of its creation; and we have no doubt it was the clear intention of the legislature that they should have the power of removing the superintendent as well as appointing him, and otherwise properly managing the institution. But this power of removal was limited. For two causes only could it be exercised. Except for these causes the superintendent was placed even beyond the power of the trustees during the term for which he should be appointed. No change of political parties, or other inferior consideration, could ever disturb him in his high and responsible position. Infidelity or incompetency alone should authorize his removal. When those causes should be found to exist, the highest interests of the institution and its inmates must peremptorily require the prompt and energetic exercise of this power. It could not be compatible with those

The People, *ex rel.* Stevenson *v.* Higgins.

interests, that action should be delayed till the assembling of the legislature, or till its members, with the governor and judges, could be got together from the different parts of the State, as a board of visitors, and do that which should be done promptly whenever either of the causes should exist. The trustees were vested with the general control and management of the affairs and interests of the institution; they were authorized to appoint the superintendent, who might be removed for the specific causes, and they were the appropriate body when either of those causes should exist, to make that removal. Had the law been silent as to the tenure of the office, and on the subject of removal, we should not hesitate to hold that the power of amotion was incidental to that of appointment, and that they might remove him without assigning any specific cause, whenever in their judgment the best interests of the institution should require it. Admitting the 17th section created a board of visitors in the technical sense of the term, and still their jurisdiction to remove was not original, but appellate. The only possible way' in which they could interfere in the matter would be by entertaining an appeal from the decision of the trustees, and I do not believe that the legislature intended to organize such a tribunal by the seventeenth section; but that we need not decide. Admitting the power of the trustees to remove the superintendent, and the questions still remain, whether they proceeded in a legal manner to make the removal, and whether the removal was made for a legal cause. As to the mode of proceeding, it was insisted that specific and formal charges should have been preferred against the superintendent; that he should have had a formal notice of the time and place of the trial of those charges; that a regular trial should have been had upon the testimony of witnesses, and even that he was entitled to a trial by jury. The statute has made none of these formalities necessary, nor does the common law so interpose and attach itself to the statute as to require them. In support of the position as asserted for the defendant, the case of The Commonwealth *v.* Barry, Hardin, 229, was referred to. There the constitution had vested in the court of appeals the jurisdiction to remove clerks of the circuit courts for official misconduct, and upon a complaint made to that court of official misconduct of a clerk of a circuit court, the court of appeals directed the attorney-general to file specific charges against the clerk, which should be served upon him by copy, with a notice to him to appear and defend, and upon those charges a trial was had before the court upon testimony. While the circumstances of the case rendered such formal proceedings eminently proper, there is not a word in the

10*

case intimating that that course was adopted in obedience to any settled practice applicable to cases of a similar kind, or even in conformity to a single precedent. The most that can be said of the case is, that there the court deemed such a course right and just, and having the right to establish such a mode of proceeding as was deemed right, that mode of proceeding was required. Had the defendant been their own clerk, and the causes for removal established by their own observation, there is no intimation that such formal proceedings would have been required, or any such trial had. In cases of this sort, where the law is silent as to the mode of proceeding, reference must be had to the nature of the case, to determine what course justice requires the amoving power to pursue in exercising their jurisdiction. Here the trustees were charged with the general management of the institution, and were authorized to appoint a superintendent possessed of certain qualifications; and for the want of certain of those qualifications they might remove him. They are not bound down by any legal rule of evidence, when determining as to the existence of those qualifications for the purpose of making the appointment; nor, on the other hand, are they thus restricted when determining upon the absence or want of certain qualifications, when acting upon the question of removal; they may determine that question upon their own observation, and exercising their own best judgment, as well as upon facts detailed by others, or upon the opinions of witnesses. Indeed, they could scarcely have more certain or satisfactory guides, upon which to determine as to the want of proper and necessary qualifications, than their own observation of the manner in which the institution was managed and conducted by the superintendent. None could have greater facilities for correct observation than themselves; and from their position, they must be presumed to be capable of forming correct opinions upon such observations. Suppose upon their visitations they should find the affairs of the institution badly managed, the discipline and treatment of the patients outrageous and abusive, and all things going on manifestly wrong, may they not from this judge that the superintendent does not possess those qualifications which are requisite for the place which he occupies? When we consider the class of patients under his charge, and their helpless condition, we might imagine the most aggravated cases of misconduct of the superintendent, possibly falling under the immediate observation of the trustees, evincing an utter want of both moral and mental qualifications for the high and confidential trust reposed in him; and in such a case as that, have they not the power to remove him at once from the place he occupies?

In such a case shall their hands be stayed till formal charges are presented, till a notice to appear and defend against those charges has been served, and a protracted trial had, for the purpose of proving, by the testimony of witnesses, facts which they already know by their own observation, and in the mean time the same abuses continued before their faces? Such a proceeding, instead of promoting the ends of justice and the objects of the law, would be but a mockery of the one and an abuse of the other. As we understand this law, these trustees are charged with the responsibility of providing a suitable superintendent for the institution. When the appointment is once made, they are not at liberty to remove him from mere caprice or partiality, but only for infidelity to the trust reposed in him, or for the want of the necessary qualifications to the discharge of the duties of that trust; they are charged with the responsibility of deciding these questions, and of acting upon that decision. Circumstances may require, and even the very existence of the institution, for any beneficial purpose, may demand the most prompt and energetic action on the part of the trustees in the removal of the superintendent, and the law did not design to leave them powerless to act in such an emergency. If they do act, they must act under the responsibility imposed upon them by the law; but under that responsibility it was necessary that they should have authority to act. What endowments were necessary to constitute requisite qualifications must be always matter of opinion, and upon that question the law has clearly made it their duty to pass in the first place, in making the selection, and the law supposes them competent to pass upon that question; and upon that they must necessarily form an opinion from the best lights which they can get, and to enable them to do that understandingly and justly, it was not required that they should swear witnesses. If the trustees were supposed to be qualified to pass upon the question of qualification, so as to do justice to the institution as well as to applicants in making the appointment, so also they must be presumed to be capable to pass upon the same question when it arises in relation to a removal. And in the latter case, they must be manifestly better qualified to judge than in the former; for their connection with and relation to the institution, with their means of observation, must enable them to form an opinion more understandingly than in the first instance; and that, too, without the examination of witnesses. This they may do, if they choose, in either case; but we are well satisfied they are not bound to do so. They may act upon their own judgment and their own observation; and whenever they are prepared to

take the responsibility of saying that the incumbent does not possess the necessary qualifications for the office, they have the right, and it is their duty to remove him for such cause. If it be said that they may be influenced by their prejudices in the formation of this opinion, and thereby do great injustice to the incumbent, an objection is raised which is alike applicable to all human tribunals. Confidence must be reposed somewhere, and the power to act must be vested in somebody; and whoever this might be, whether the trustees, a jury, or the courts, in either case the objection still remains. It may be presumed to be as safe with the trustees as with anybody. It may be said, that so long as they are made the sole judges of the existence of the causes for which they may remove the officer, and the specification of those causes, there ceases to be any restraint upon them; for if they choose to remove the officer from mere caprice, they have but to state that it is for one of those causes which they find to exist. This is assuming that they are not only prejudiced, but corrupt, for it would be scarcely less than this for them in fact to remove the officer for an insufficient cause, but for the purpose of legalizing the act, untruly assign a legal cause for the removal. This objection is of the same character with the former, and might possibly exist in relation to any tribunal which might have been instituted.

The question still remains, whether the fourth plea, which sets out the proceedings of the board of trustees, shows that they did remove him for one of the causes specified in the charter. At a meeting of the board held on the 14th of April, 1853, a resolution was passed, which, after reciting the existence of sundry differences and difficulties, proceeds: "And whereas this board, after mature reflection, and acting without regard to men, but solely with a view to the good of the institution, are fully convinced that the said medical superintendent does not possess the kind of qualifications which are necessary to the discharge of the duties of said office, and that the harmony, good management, usefulness, and prosperity of the institution demand a change in said office of medical superintendent, and without such a change the hearty coöperation of the community in which said institution is situated, cannot be attained in promoting its usefulness; therefore, be it resolved, that the board will, at the earliest practicable period, consistent with the interests of the institution, procure the services of another medical superintendent, who, in the estimation of the board, shall be qualified to discharge the duties of said office." At a subsequent meeting, on the 6th of June following, the board, in a preamble, referred to the resolutions passed on the 14th of April, and the reasons

The People, *ex rel.* Stevenson *v.* Higgins.

therein stated, which required the removal of the superintendent; and " Resolved, that James M. Higgins, medical superintendent of the Illinois State Hospital for the insane, be, and hereby is removed from said office." As the preamble refers to the causes stated in the first resolution for the removal now made, we have to look to that resolution to see whether he was removed for one of the causes for which the statute authorized them to make the removal. The statute says, " He shall be subject to removal only for infidelity to the trust reposed in him, or incompetency to the discharge thereof." The reason assigned for the removal is, " that the said medical superintendent does not possess the kind of qualifications which are necessary to the discharge of the duties of said office." Unless the board were bound to adopt the precise language of the statute, it cannot well be denied that the cause assigned for the removal was sufficient; the substance is the same, though, perhaps, expressed in more delicate or less offensive terms. If he did not possess the kind of qualifications necessary to the discharge of the duties of his office, . then he was incompetent to the discharge of the duties thereof, in a proper and a profitable manner. The duties of that office must be vastly varied, and extend even far beyond a thorough knowledge of the science of medicine, and of the diseases of the human intellect, and the proper mode of treating them. Beside these, a sound judgment, urbanity of manners, amiability of disposition, and proper temper, may be equally indispensable to render him competent to the proper discharge of the duties of that office. No matter what his qualifications may be, if they are not of the kind which are necessary to the discharge of those duties, then he is not competent to their discharge. Competency includes every necessary qualification. It was not necessary that the cause assigned for removal should be stated in the precise language of the statute. If it substantially embraced it, that was sufficient. Such was the case here, and we are of opinion that the fourth plea shows a removal in a legal mode, and for a sufficient reason ; and that the decision of the board of trustees is conclusive upon that point.

The judgment of the circuit court must be reversed, and the cause remanded.

*Judgment reversed.*