STATE ex rel. DAYHOFF, Relator, v. A. F. BRODIE et al., Appellants.

Kansas City Court of Appeals, March 2, 1914.

1. MANDAMUS: Municipal Corporations: City Charter: Agents: Employees: Officers: Superintendent of Workhouse. The board of public welfare under the charter of Kansas City adopted in 1908, was authorized to fix a schedule of "agents and employees" in its department, and it was *held*, that such authority did not authorize the board to oust the superintendent of the workhouse.

2. ———: ———: Officer: Employee: Agent. The superintendent of the Kansas City workhouse who is appointed by the mayor for a definite term at a stated salary, who is required to take an oath of office and give bond, is an officer as distinguished from an employee or agent.

3. ———: ———: Board of Public Welfare: Department: Sec. 10, art. 15 of the charter of Kansas City in regard to civil service, does not authorize the board of public welfare to discharge a superintendent of the city workhouse. Since the mode of discharge of such an officer is otherwise declared by the charter. *Quaere* whether the board is the head of a department for the purpose of appointing and discharging employees.

Appeal from Jackson Circuit Court.—*Hon. Jos. A. Guthrie,* Judge.

AFFIRMED.

*A. F. Evans, F. P. Walsh, J. P. Aylward, J. W. Garner* and *A. F. Smith* for appellants.

An ordinance may be repealed by implication. 26 Am. & Eng. Enc. Law, 720; Grimes v. Reynolds, 94 Mo. App. 576, 584; 184 Mo. 679, 688. If the power of removal was in the mayor and not in the board, the approval of the board's act by the mayor ratified the order of removal. 20 Am. & Eng. Enc. Law (2 Ed.) 1180, 1182; Hill v. Indianapolis, 92 Fed. 467; Edwards v. Kirkwood, 147 Mo. App. 599, 616; O'Dell v. Scranton, 126 Mo. App. 19, 34, 35. In a proceeding for extraordinary relief brought by a relator for his individual benefit the burden is on the relator to prove the allegations of his petition. State ex inf. v. Heffernan, 148 S. W. 90; State ex rel, v. Cape Girardeau, etc., Co., 74 Mo. App. 273; 2 Spelling on Inj. and other Extraordinary Relief, Sec. 1696; 26 Cyc. 470.

*F. M. Lowe* and *Charles R. Pence* for respondent.

An officer unlawfully removed can by mandamus, compel the proper authorities to issue him a warrant for his salary for the part of the term he was not permitted to serve. State ex rel. v. Hawes, 177 Mo. 387. And this writ of mandamus should be granted even though the term of office had expired before the granting of the writ, and even though the personnel of the respondents had changed. State ex rel. v. Walbridge, 153 Mo. 204; Merrill on Mandamus, Sec. 136. The allegations of the alternative writ were not specifically denied by defendants and are therefore taken as true. State ex rel. v. Broaddus, 234 Mo. 331, 332; State ex rel. v. Adams, 161 Mo. 349; State ex rel. v. Riley, 219 Mo. 667. The ordinance providing for the office of the superintendent of the workhouse was in full force and effect at the time of the adoption of the present charter. It is not in any manner inconsistent with any provisions of our present charter and

therefore remained in full force and effect. Quintette v. St. Louis, 76 Mo. 402; State ex rel. Cannon v. May, 106 Mo. 488.

ELLISON, P. J.—The relator claiming that he was illegally deprived of the office of superintendent of the workhouse at Kansas City and refused the emoluments of that office by the board of public welfare, obtained an alternative writ of mandamus against that board and the comptroller and the auditor of such city, requiring his restoration to the office and the payment of his salary. At the trial, his title to the office having expired, he amended the writ so as to omit a claim to being placed back in the office and the writ was made peremptory for the payment of his salary. Defendant asked an appeal to the Supreme Court on the ground that a constitutional question and title to an office were involved, but the trial court granted the appeal to this court. On reaching this court we ordered it transferred to the Supreme Court. On reaching that court the cause was transferred back to this court on the ground that title to an office under the State was not involved, nor was a constitutional question.

It appears that in July, 1910, relator was duly appointed by the mayor of Kansas City to the office of superintendent of the workhouse, that he was commissioned, took the oath, gave bond, and entered upon the duties of the office and discharged them until the 19th of June, 1911, receiving his salary as such official, at the rate of $1800 per year, up to a few days prior to that date. On the 14th of June, 1911, the defendant board of public welfare notified relator that the position of superintendent of the workhouse was abolished and that on June 23rd his office would cease to exist. Afterwards, on the same day, claiming relator had refused to obey an order of the board, that body attempted summarily to discharge him. Relator

then, on July 12th instituted this proceeding. Afterwards, on the 1st day of August, the defendant board entered upon another plan of ousting him and made a report of its dismissal of relator to the mayor of the city and the latter officer approved of his discharge in a communication to the board on the 29th of August, 1911. After that, on the 6th of October, 1911, the Mayor reported his action to the upper house of the common council of the city as provided by the charter and his action was not disapproved by that body.

Relator insists that he could not be discharged from his office except by the mayor and the upper house of the council acting under section 25, article 4 of the charter (page 194) providing that the mayor may suspend any officer, or the incumbent of any board appointed by the mayor, and upon reporting such suspension to the upper house, if that body, before the end of the second session afterwards, does not, by a two-thirds vote, disapprove of the suspension he shall be considered removed. The second session of the upper house came to an end in the latter part of October without disapproving of relator's suspension as just stated and he concedes that at that time, and not before, he ceased to be superintendent.

Defendant contends that relator ceased to be an officer several months prior to this, viz., in June, by the provision of an ordinance No. 8594, approved June 8, 1911; and that the action of the board in reporting to the mayor and the action of the mayor in reporting to the upper of the council was merely to make doubly sure that relator had been gotten out of the superintendency of the workhouse. That ordinance is based on section 27 of article 4, of the charter (p. 199) providing that the "board with the concurrence of the common council, shall fix a general schedule of the number, grade and compensation of all agents and employees of the department under its supervision

177 Mo. App. 25

and control.'' The board fixed a schedule consisting of a day and night matron, forelady in sewing room, stewardess, three attendants and a day and night engineer, with their compensation. It did not mention the superintendent. This schedule was approved by the ordinance last mentioned; section three thereof, reading that ''fifteen days after this ordinance takes effect all offices and positions under the board of public welfare other than those named in the foregoing schedule are hereby abolished.'' That ordinance being approved June 8th it follows, according to defendant's insistence, that on June 23rd relator's office was abolished.

The important question is, did the above provision of the charter, authorizing the board to make a schedule ''of the number, grade, and compensation of all agents and employees,'' include an officer appointed by the mayor, known as superintendent of the workhouse. Or, stated another way, does the charter in granting authority to the board to make a schedule of the number and grade of agents and employees include the superintendent, with power in the board (when ratified by the council) to abolish that office. If the superintendent is an officer as distinguished from an agent and employee, he does not fall within the authority granted by the charter and the action of the board and the ordinance of the council confirming it are void.

Prior to the adoption of the present charter in 1908, there had been an office of superintendent of the workhouse. [Section 1230, art. 4, R. O. 1898.] The office was continued under the new charter, adopted in 1908, and two years after its adoption, viz., February 2, 1910, in section 982 of revised ordinance No. 4031, the former provision was re-enacted in these words:

''A superintendent of the workhouse shall be appointed by the Mayor, by and with the consent of the upper house of the common council, at the open-

ing of each fiscal year, and shall enter upon the discharge of his duties when duly appointed and qualified; unless he is sooner removed, he shall hold his office for the term of one year, and until his successor is appointed and qualified."

Here we have provision for appointment by the mayor with the consent of the upper house of the council of a superintendent for a term of one year, who, by other provisions, was required to give bond and subscribe to an oath of office. And with charter power of removal vested in the mayor and upper house of the council, as we have set out above. Such an officer does not fall within the charter words, "agents and employees;" and the board in making its schedule (approved by ordinance) of a matron, stewardess, etc., etc., did not thereby abolish the office of superintendent. [State ex rel. v. May, 106 Mo. 488.] In that case the question involved whether a "superintendent of streets" was an officer as distinguished from an employee. The reasons assigned in that case as to the character of the position, and service, the mode of appointment and designation of the office in ordinances are so similar to this case that it is directly applicable. To the same effect is the later case of Macey v. St. Louis, 213 Mo. 384, 394.

That the city council did not consider that the charter authorizing the board of public welfare with approval of the council, to oust an officer of the workhouse appointed by the mayor with a defined term, with special charter provision as to his removal, is made clear by section 1017 of ordinance 4031 approved in February 1910. (Revised Ordinances 834, 836). That section provides that if the superintendent fails in his duty the board shall investigate and "report to the mayor" for his action; while if an employee fails in the discharge of his duty "such board shall have power to discharge, or suspend such employee as it may deem proper." This is the ordinance creating the

board of public welfare and is quite persuasive that the council considered that the charter, while allowing the board to dismiss an employee, did not grant that right in case of an officer. To this may be added the conduct of the defendant board itself showing a lack of confidence in its power to oust the relator by the schedule process, in that, as above stated, it finally reported him to the mayor and he laid the matter before the upper house.

But, among defendant's points in support of the ousting of relator, is that in section 10 of article 15 of the charter is found authority in the board to discharge him. The portion of that section applicable reads as follows:

". . . all appointments to positions and employments in the several departments of the city service shall, unless in this charter otherwise provided be made by the respective heads of such departments under and in conformity with the provisions of such rules and such heads of departments shall respectively have power to remove or discharge any person holding any office, position, or employment in their respective departments whenever, in their opinion, the good of the public service requires the exercise of such power. It shall be the duty of a discharging officer, upon request of a discharged person at any time after discharge to give such person a correct statement in writing of the reasons for his discharge. . . ."

It will be observed that that section bestows the power of appointment and removal of officers to the heads of departments and it might well be said (though it is not necessary to so decide) that the heads of departments could only remove those whom it was empowered to appoint; and as the defendant board had no power to appoint a superintendent of the workhouse (that power being in the mayor) it could not remove him. It will be further observed, the section

seems to read (though we do not decide that it means) that the heads of departments clothed with the power of appointment and removal are officers and not boards. For, it reads that such "discharging officer"—such head of the department officer who discharges—shall "upon request of a discharged person," give him a certificate, etc.

And in providing for other boards connected with the city government, the charter seems to contemplate that the "head of a department" for the appointment and discharge of employees is the officer in control of that department. Thus there is the "board of fire and water commissioners," yet the fire chief is the executive head of the department and he appoints and discharges the employees and men. [Sec. 16, art. 11, charter 1908 (p. 381).] And the assessor and collector of water rates is the head of his department with same power. [Sec. 6, art. 11.] So of the park board which appoints a chief executive officer and he is the head of the department who appoints and discharges employees. [Sec. 3, art. 13, charter, p. 401.] So with the board of public works, the city engineer is the head of his department and he appoints and removes employees. [Sec. 4, art. 10, p. 631, of charter.] And section 5 of the same article, p. 362, makes the superintendent of streets the head of that department with like power. These provisions as to the other boards of the city, strongly support the suggestion that the heads of departments mentioned in section 10, article 15, aforesaid refers to an officer at the head of some department and not to the board. But however that may be, the section excepts those instances where it is "otherwise provided" in the charter, and we have seen that it is otherwise provided in section 25 of article 4 (p. 194 Revised Ordinances) wherein the mode of removal of "Any officer, or the incumbent of any board, appointed by the mayor, whether appointed with or without confirmation may be suspended

by the mayor," and removed if sanctioned by the upper house. We have had occasion in Sanders v. Kansas City decided this term and Chestnut v. Kansas City, 171 Mo. App. 327 to discuss the questions somewhat related to those presented in this case but nothing decided as contrary to what we have said.

The conclusion which the foregoing considerations bring us to is that relator was the legal incumbent of the office of superintendent of the workhouse entitled to the salary thereof until he was ousted by the action of the mayor, at the end of the second session of the upper house of the council, and the judgment is therefore affirmed. All concur.