COWAN, MAYOR v. STATE EX REL. SCHERCK

(No. 2200; September 19, 1941; 116 Pac. (2d) 854)

310

For the plaintiff in error, there was a brief and an oral argument by *W. J. Wehrli* of Casper.

312

For the defendant in error, there was a brief by *E. E. Enterline* and *M. L. Bishop, Jr.* of Casper, and oral argument by *Mr. Bishop*.

BLUME, Justice.

This is an action in mandamus brought by the relator for the purpose of compelling the defendant, mayor of the City of Casper, Wyoming, to reinstate him in the office of chief of police (marshall) of that city, and for general relief. It appears that relator was appointed to that office in January, 1936, to serve to the end of 1937. He was dismissed from office for incompetency and neglect of duties about May 27 or May 29, 1937. This action was commenced on July 24, 1937. After the filing of several pleadings by the defendant, and the action of the court thereon, the defendant filed a second amended answer on August 17, 1938. A demurrer was filed thereto on the ground that it fails to state a defense. The demurrer was sustained and the defendant electing to stand upon his answer, judgment was entered on April 19, 1940, merely to the effect that "the relator was wrongfully and unlawfully removed from office as marshall or chief of police of the city of Casper, and that the order and notice of such removal were void and of no force or effect." From that judgment the defendant has brought proceedings in error.

It is alleged in the second amended answer of the defendant that on June 1st, 1937, three days after formal notice of dismissal was given to the relator, one Will Clark was appointed as chief of police of the city of Casper; that the appointment was confirmed by the city council of Casper; that he duly qualified and ever since that time has been chief of police of Casper and has been paid the salary of the office. It is contended by the defendant that mandamus is not the proper remedy for reinstatement to an office, if another occupies it; that since the occupancy of the office in question by another duly appears by the second amended

petition, the demurrer thereto should have been over-ruled for that reason.

The authorities do not seem to be in harmony. Dillon, Municipal Corporations (5th ed.) Sec. 487, states that if the "person wrongfully removed is a public officer * * * and if the office has been filled by the appointment of another person, the actual incumbent of the office is entitled to be heard, and under the rule that title to office cannot be determined by mandamus, the remedy of the person alleged to have been wrongfully removed is by quo warranto and not by mandamus." High on Extraordinary Legal Remedies (3rd ed.) Sec. 49, states that the "rule may now be regarded as established by an overwhelming current of authority that when an office is already filled by an actual incumbent, exercising the function of the office de facto and under color of right, mandamus will not lie to compel the admission of another claimant, or to determine the disputed question of title." So Mechem on Public Officers, Sec. 346, states that "where an office is already filled by an officer de facto who is discharging its duties, mandamus will not lie to compel the admission of one claiming to be the officer de jure, but resort must be had to quo warranto." A late case on the subject, which cites many other cases, and holds the foregoing rule, is State ex rel. v. Kansas City, (Mo.) 7 S. W. 357, 59 A. L. R. 95. In 35 Am. Jur. 15, where reference to the foregoing rule is made, it is stated that "the rule is not, however, uniformly adhered to. Some courts regard mandamus as a proper remedy to reinstate one illegally removed from office, even though the functions of the office are being exercised by another person elected or appointed thereto." In note 84 A. L. R. 1136, about fourteen jurisdictions are cited as holding that mandamus is the proper remedy to restore one to office from which he has been illegally removed. It appears from a note in 55 A. L. R. 998 that, according to the

majority opinion, the salary pertaining to a public office cannot be paid twice, and that the only remedy of a de jure officer, when his right to the office has been established, is against the defacto officer. We can readily see that where that rule prevails, good reason exists why the de facto officer should be made a party to a proceeding to try title to the office—in other words, that quo warranto should be brought instead of mandamus. But in a number of jurisdictions it is held that payment of salary to a de facto officer does not relieve the governmental agency from paying it again to the de jure officer. This is said to be the minority rule. 55 A. L. R. 1004. Among the cases so holding is Rasmussen v. Carbon County, 8 Wyo. 277, 56 Pac. 1098, 45 L. R. A. 295. We have not been asked to disturb that holding. If a defacto officer cannot be harmed by the judgment of a court, no reason exists why he should be made a party to a cause. And that is the situation in the case at bar. The judgment of the trial court did not attempt to oust him. It was too late to do that, when it was rendered. All the judgment sought to do is to establish the illegality of the removal of the relator, so as to be the basis for the recovery of salary. Furthermore, in State ex rel. v. Grant, 14 Wyo. 41, 81 Pac. 795, we held that where a specific duty, incumbent upon an official, is sought to be enforced, mandamus may be brought, though that incidentally involves the right to an office. In that case mandamus was brought to enforce the payment of salary to one who claimed that he was illegally removed from office, and for whom a successor in office had been appointed by the governor. The court held that mandamus was the proper remedy. Two questions were involved, one relating to salary, and one relating to the legality of the removal. The same two questions are involved in the case at bar. In the Grant case the question of legality of removal was incidental to the question of

recovery for salary. In the case at bar the reverse is true, namely, the question of recovery for salary is incidental to the question of legality of removal. The difference does not seem to be sufficient to warrant the adoption of a different rule. In the Grant case, the court stated, and rightly so, that it could not, in that case, definitely determine the right to the office in so far as the incumbent was concerned. Not even such or a similar obstacle exists in the case at bar. We think, accordingly, that we must overrule the objection here considered.

■ Counsel for appellant, however, claim that the question of salary is not involved in this action; that the only question before the court is as to whether or not the relator was legally removed; that since it was too late to reinstate the relator, the case before the court was moot, and should have been dismissed. It is true that the main object of the suit was to restore the relator to office. But the petition asked for reinstatement to office "with all the privileges, prerogatives and emoluments thereunto belonging with all properties and rights of which he has been deprived by reason of the wrongful acts and orders aforesaid." General relief also was asked. This, we think, sufficiently brought the question of salary into the case. Goldsmith v. Board, 63 Cal. App. 141, 218 Pac. 296, where only general relief was prayed in addition to the prayer for reinstatement to office. In 38 C. J. 712, it is stated that "mandamus does not lie to compel restoration to office * * * where the relator's term of office has expired or will expire before the writ can become effective." That, perhaps, might be true, if no question of salary were or could be involved. The cases cited in the text, except the Texas case, did not involve any question of salary, or could not involve it by reason of the majority rule above mentioned that the only remedy for the recovery of salary already paid to a de facto officer is against

the latter. That appears to be the rule in Iowa and Kansas (55 A. L. R. 998), and the cases cited by counsel from these states cannot, accordingly, be controlling herein. The rule in Texas appears to be unique. It seems to be recognized in that state that an independent action may be brought for the recovery of salary by a de jure officer, even though the title to the office has not been previously established. McWhorter v. Northcut, (Tex. Civ. App.) 57 S. W. 904. In that case the question was mooted, as to whether or not a judgment dismissing an action for mandamus on the ground that the term of office has expired would bar an action for the recovery of salary. Evidently to obviate this difficulty, the supreme court in Riggins v. Richards, 97 Tex. 526, 80 S. W. 524, dismissed an action for mandamus as being moot, but "without prejudice to the relator's right to bring an action for his salary." No particular harm is done, of course, except in connection with costs, by dismissing an action for mandamus as moot where the term of office has expired, if the right to recovery of the salary of the office is not affected, and if the trial court had dismissed the action, and had preserved the right to bring an action to recover the salary, or if that right existed as a matter of law though the action herein was dismissed—a point we do not decide—we might have affirmed such ruling on the theory of the Texas case last cited. But the court did not dismiss the action, and the point remains as to whether or not the question of salary was properly and legally brought into the case, so that on that account the action of the court in not dismissing the action as moot was proper. In 46 C. J. 1028 it is stated that "when a de facto officer is in possession of an office, discharging its duties under color of right, a person claiming to be a de jure officer, entitled to possession of the office, cannot maintain an action against the state or other governmental body for the emoluments

of the office without first establishing his right to the office by direct proceedings." The rule has been applied to mandamus. 35 Am. Jur. 20; Note 5 A. L. R. 581. In other words some of the authorities seem to hold that the question of title to the office and the question of salary are questions which cannot be determined in one action, but that the right to the title to an office must be determined first in an independent action, before recovery can be had for salary. But it seems clear that as to whether the points involved in this action are litigated in one form of action or in another is purely a matter of procedure (McKannay v. Horton, 151 Cal. 711, 91 Pac. 598, 13 L. R. A. N. S. 661), and it would seem that the time has passed when courts should be asked to spend much time in investigating regularity in matters of procedure, if no injustice has been done. No injustice is or can be done, if the question of legality or illegality of removal from office, and the incidental right to salary is determined in this action, rather than in another action or in separate actions, and that is substantially what the court did in this case, although no direct order for the payment of salary was made by the court, and though the temporary writ issued herein was not made permanent. This court in State ex rel. v. Grant, supra, determined both questions in one action. In Goldsmith v. Board, supra, and People v. Thompson, 316 Ill. 11, 146 N. E. 473 and State ex rel. v. Kansas City, 206 Mo. App. 17, 226 S. W. 986, it was held that the payment of salary might be ordered as incidental to an action for mandamus, brought for the purpose of restoration to office. To that effect, too, are State ex rel. v. Walbridge, 153 Mo. 194, 54 S. W. 447; State ex rel. v. Brodie, 177 Mo. App. 382, 164 S. W. 233. The rule of these cases must commend itself to all those who would not subordinate form to substance. We think, accordingly, that the contention that the case was and is moot must be over-

ruled. As to the rule in quo warranto, see Albright v. Territory, 13 N. M. 64, 79 Pac. 719, 11 Ann. Cas. 1165; 51 C. J. 331. In the Albright case the court held that "the best considered American cases all hold that the expiration of the term constitutes no reason for dismissal," apparently because the relator is entitled to costs, if successful.

■ The relator contends that he was removed from office without notice or hearing, and that, accordingly, the removal was void. Section 22-314, Rev. St. 1931, provides for the appointment of a marshal or chief of police for a definite time, and further provides that "the mayor shall have power to remove any officer appointed under this article for incompetency or neglect of duty." It is silent on the point whether the removal may be made with or without a hearing. It is accordingly contended by appellant that, under such provision, no notice and no hearing was necessary. A number of cases are to that effect. Note 12 Ann. Cas. 995-1000; City of Hoboken v. Gear, 27 N. J. L. 265; State ex rel. v. Doherty, 25 La. 119; Bynum v. Strain, 95 Okl. 45, 218 Pac. 883; State v. Sanchez, 32 N. M. 265, 255 Pac. 1077; Darnell v. Mills, 75 Wash. 663, 135 Pac. 475; California and Illinois cases cited in Dillon, supra, note p. 792. The majority of courts, however, hold the contrary. 43 C. J. 665. We naturally hesitate to go contrary to the greater number of authorities, and since the case may be decided on other grounds, we do not deem it necessary to decide the contention here made. See, for a good discussion of the point, 3 Mich. L. R. 290-301.

There are some exceptions to the rule that notice and hearing are necessary. Dillon, supra, Sec. 481, states that "if the amotion be for good cause, such as conviction for an infamous crime or the repeated declaration of an officer that he would not discharge the duties of the office, while it would be more regular to give the

notice, yet its omission will not entitle him to mandamus to be restored." Counsel for the defendants refer to the fact that in this case the relator, as alleged in the second amended answer, admitted that he was incompetent to perform the duties of his office, and he intimates that such case should come within the exceptions to the rule. We do not think it necessary to decide that point, although such admission, if made, should be taken into consideration in determining as to whether or not the relator was given a fair hearing.

■ As already stated, the relator contends that he was removed from office without notice or hearing. That is denied by the defendant. Relator bases his contention on a letter written by the mayor on May 29, 1937, and sent to the relator, which stated that "I am charging you with incompetency and neglect of duty." We do not, however, think that this statement necessarily negatives a previous hearing. The second amended answer alleges that the letter constitutes merely "formal" notice of removal, and further alleges that specific charges were made against the relator by the mayor on May 25, 1938, and that a hearing was had thereon before him on May 27th, 1938, and that the relator appeared at that time and was permitted to make whatever defense he had. It is not questioned that the charges are such as to furnish sufficient ground for removal, and we shall not take the space to set them out. The notice and hearing are alleged to have been oral. The allegations must be taken as true for the purposes of the demurrer. It seems that the trial court took the view that written notice and charges were necessary, and that the demurrer to the seconded amended answer was sustained on that ground, so far as the foregoing allegations are concerned. We held in Baird v. School District, 41 Wyo. 451, 287 Pac. 308, that oral notice and charges are sufficient as a basis for dismissal of a teacher, if a fair

hearing has been had. This case was not cited by either side of the controversy herein, and has apparently been overlooked by them, and was probably not called to the attention of the trial court. In that case and in this the person removed was a public employee; in both instances the public interest involved appears to be alike; the teacher held his position for a definite time; so did the officer involved in this case—the former under a contract, the latter under the law. While some of the cases have drawn a distinction between a teacher, as a mere employee, and an officer, and while courts would perhaps be inclined to favor an officer somewhat more than an employee, yet it would seem that fundamentally the difference is not great and would hardly seem to be sufficiently substantial so as to justify us in laying down a rule in this case entirely different from that laid down in the Baird case. We have, however, reconsidered the point, and some additional remarks may not be amiss.

There are many cases which have held that notice and charges must be in writing, but they are invariably based on statutes which made that specific requirement, and which in most cases were designed to promote civil service, and prevent dismissal for merely political reasons. The legislature in this state in its session of 1931 (Sections 22-201-204) attempted to make such provision in connection with the removal of members of police departments. But that act was held unconstitutional. McFarland v. City of Cheyenne, 48 Wyo. 86, 42 P. (2d) 413. The legislature has not, since that time, attempted to correct the legislation to meet the constitutional objections pointed out by the court, which seems to indicate, if anything, that in its judgment, written charges and notice are not necessary in that connection under the legislation which remains on our statute books on this subject. It may not be without interest to note that in the case just cited the police

officer was removed without any notice or hearing, although the statute there involved governing the removal of officers (Sec. 22-1908, Rev. St. 1931), is similar to the statute involved in this case. It may be that some early cases, for instance Geter v. Commissioners, 1 Bay (S. C.) 354, decided in 1794, contemplated notice and charges in writing before an officer could be removed. And that, perhaps, was true with courts which have considered the removal of officers to be a judicial act. It is not unlikely that some of the decisions, particularly those before the 19th century, and cases decided since that time, but which relied on the early, especially early English, decisions, were to a more or less extent influenced by the view that a public office is private property. See 3 Mich. L. R. 291. Blackstone, 2 Comm. 36, states that "offices which are a right to exercise a public or private employment, and to take the fees and the emoluments thereunto belonging, are also incorporeal hereditaments * * * for a man may have an estate in them, either to him and his heirs, or for life, or for a term of years." Offices could be bought and sold, and while attempts to prevent that were made from time to time (see 1 Holdsworth, History of English Law, pp. 19, 246-252, 424-429, 439-442) we are told that the system was not eradicated until the 19th century. Holdsworth, supra, p. 428. The former view no longer prevails; the rights to an office are limited; the legislature has complete control thereof except as specifically limited by the constitution; the tenure thereof is not protected by the constitutional provision that no man can be deprived of property without due process of law. 46 C. J. 933; Lee v. Board, 3 Wyo. 53, 31 Pac. 1045; Reals v. Smith, 8 Wyo. 170, 56 Pac. 690. Many authorities hold that removal from office is an administrative act, although the exercise of the power involves quasi-judicial action in the determination of questions of fact and of law in connection therewith.

Dillon, supra, Sec. 446; 46 C. J. 993; State ex rel. v. Ross, 31 Wyo. 500, 228 Pac. 636; State ex rel. v. Common Council, 90 Wisc. 612; State ex rel. v. Kennelly, 75 Conn. 704. Other courts hold that the power to remove is essentially judicial in character. See article 3 Mich. L. R. 341-351. It is not, perhaps, important whether we call the power administrative or judicial, except that courts holding the latter view might be inclined to require a stricter and more formal procedure in cases in which notice and hearing is required than courts holding the former view. Many officers, under various statutes of the country, may be removed at pleasure. Some statutes provide for removal without requiring any cause therefor. Others provide for appointment of officers without any definite term. In such and other cases, no notice, charges or hearing are necessary. Such legislation, and the holding of the courts thereunder, weaken the foundation of the arguments of other courts as to fundamental rights in connection with removal from office. However, an incumbent of an office has a substantial right therein, which, in fact, if Rasmussen v. Carbon County, supra, was decided correctly, appears to be in the nature of a property right. In some instances charges against an officer might affect his good reputation. So, as already stated, most of the courts hold that in cases in which an officer is appointed for a definite term, and where he may be removed only for cause or for definitely specific causes, notice and hearing are necessary. That holding is based on the theory that removal should not be made arbitrarily, and that ordinary fairness requires that the officer should have an opportunity to defend himself. Fairness is required, but, obviously, what are the elements thereof must depend on the facts and the circumstances of the case, and hence, it would seem, should be determined not from a technical or formal but from a broad standpoint, in the absence of

legislation on the subject; for though courts, it is said, legislate interstitially, and they perhaps have already done so in connection with the rule under discussion, they should not usurp the function of the legislature. "Where the law is silent as to the mode of proceeding (as in the case at bar) reference must be had to the nature of the case, to determine what course justice requires the removing power to pursue in exercising their jurisdiction." People ex rel. v. Higgins, 15 Ill. 110, 114. In a larger city, where the mayor, or certain boards, cannot, in the nature of things, be in close touch with the people or the affairs of the city, greater strictness in the procedure would seem to be called for than in a city of less than 20,000 people. So we cannot find it surprising that, for example, we find the Court of Appeals of New York holding, in People v. Police Comm'rs., 155 N. Y. 40, that a dismissal of a policeman for absence of duty is void, where proof thereof is not furnished under oath, the policeman claiming that he had been sick. The contrary was held, under different circumstances, in Nehrling v. State, 112 Wisc. 637; Anthony v. School District, 55 Ariz. 265, 100 P. (2d) 988. In the last mentioned case the court held that where the statute does not prescribe the procedure, it may be such as the removing power adopts. In Nehrling v. State, supra, the court stated:

"The act of the legislature in question required the trustees to take an 'official oath,' and expressly authorized them to remove the custodian 'from office for misdemeanor, incompetency or inattention to the duties of his office.' Secs. 3, 7, ch. 328, Laws of 1882. But the act nowhere requires or suggests that any witness shall be produced, much less sworn and examined, in the investigation resulting in such removal. The act seems to contemplate a summary investigation by the trustees,—of course giving such official an opportunity to be heard. As stated by Mr. Justice Winslow in a case cited by the appellant's counsel:
'The power to remove officers for cause, though to

be exercised in a judicial manner, is administrative, not judicial. It is a part of the power of the corporation, which is very useful, in fact almost necessary, for the efficient performance of the corporate duties. In this state the exercise of the power by similar bodies does not seem to have been questioned until now, though the cases have been quite numerous.' State ex rel. Starkweather v. Common Council of Superior, 90 Wis. 619.''

In State ex rel. v. Kennelly, 75 Conn. 706, it appears that the statute provided that the officer removed in that case should hold office for a definite term unless sooner removed for cause. The court stated:

"Although the power of removal may be limited by the necessity of assigning some cause, or of informing the officer removed of the cause of his removal and giving him an opportunity for explanation, and stating the ground of removal, the act belongs rather to the field of executive discretion than to that of quasi-judicial finding; and the action of the removing officer complying with the limitation is final. * * * Considering all the provisions of the charter as thus amended, we think the removal of this officer is a mode of exercising this power of removal incident to executive appointment, and that the limitation placed on its exercise is satisfied, possibly more than satisfied, when the mayor has stated to the officer the cause which induces him to contemplate his removal, being a proper and sufficient cause, has given him an opportunity to be heard in relation thereto, and assigns this cause in making the removal."

In People ex rel. v. Higgins, 15 Ill. 110, it appears that the superintendent of the state hospital was, pursuant to statute, appointed for the term of 10 years. He was removed by the trustees, after having been heard in his defense. The court, in commenting upon the procedure, stated among other things:

"Admitting the power of the trustees to remove the superintendent, and the questions still remain, whether they proceeded in a legal manner to make the removal,

and whether the removal was made for a legal cause. As to the mode of proceeding, it was insisted that specific and formal charges should have been preferred against the superintendent; that he should have had a formal notice of the time and place of the trial of those charges; that a regular trial should have been had upon the testimony of witnesses, and even that he was entitled to a trial by jury. The statute has made none of these formalities necessary, nor does the common law so interpose and attach itself to the statute as to require them. * * * They are not bound down by any legal rule of evidence, when determining as to the existence of those qualifications for the purpose of making the appointment; nor, on the other hand, are they thus restricted when determining upon the absence or want of certain qualifications, when acting upon the question of removal; they may determine that question upon their own observation, and exercising their own best judgment, as well as upon facts detailed by others, or upon the opinions of witnesses. * * * When the appointment is once made, they are not at liberty to remove him from mere caprice or partiality, but only for infidelity to the trust reposed in him, or for the want of the necessary qualifications to the discharge of the duties of that trust; they are charged with the responsibility of deciding these questions, and of acting upon that decision. * * * If the trustees were supposed to be qualified to pass upon the question of qualification, so as to do justice to the institution as well as to applicants in making the appointment, so also they must be presumed to be capable to pass upon the same question when it arises in relation to a removal. And in the latter case, they must be manifestly better qualified to judge than in the former; for their connection with and relation to the institution, with their means of observation, must enable them to form an opinion more understandingly than in the first instance; and that, too, without the examination of witnesses. This they may do, if they choose, in either case; but we are well satisfied they are not bound to do so. They may act upon their own judgment and their own observation; and whenever they are prepared to take the responsibility of saying that the incumbent does not

possess the necessary qualifications for the office, they have the right, and it is their duty to remove him for such cause."

The mayor of the City of Casper is, under Section 22-320, Rev. St. 1931, charged with the duties to take care that the ordinances of the city and the requirements of the statute are complied with. He is the superior officer of the chief of police (or marshall). Upon him devolves the primary duty to see to the peace and quiet of the community. Neglect of police officers are laid at his door. It is highly important that he and the police work in harmony for the good of the community. The supreme court of Oklahoma in Bynum v. Strain, 95 Okl. 45, 218 Pac. 883, 889, speaking of a bank commissioner, stated that "an appointee to such a position is selected by the chief executive in carrying out his sense of duties and responsibilities to the public, and with the belief that such appointee will work in harmony with and aid the Governor in fulfilling his sense of duty to the public. It is the Governor, the chief executive, who is held responsible to the sovereignty for error in his executive and administrative policies." That principle is as applicable here as in that case. If the mayor performs his duties, he is bound to be more or less closely in touch with the affairs of the city in a community of less than 20,000 people, and with the acts and omissions of the police officers under him, and we are unable to see upon what grounds we should in such case require that he should pursue a strict procedure in removing such officer upon just grounds, when the legislature has not seen fit to make such requirement. While we cannot overlook the rights of the officer removed, neither have we a right to overlook the interest of the public. The statute does not provide for notice and a hearing. The necessity therefor is only read into it by the courts because it is not consonant with the spirit of our people and our con-

stitution that an official should act arbitrarily. We do not think that we are justified in reading into the statute more than is necessary to meet the requirement of fairness. The presence or absence of arbitrariness, then, is the ultimate criterion. If, taking all facts and circumstances into consideration, the relator was given a fair hearing or hearings, however informal, and opportunity to defend himself, that should be held sufficient. Baird v. School Dist., supra. That fairness was displayed, and that opportunity given, if the facts alleged in the second amended answer are true. The demurrer should, accordingly, have been overruled, and for failure to do so, the judgment of the trial court must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and Remanded.*

RINER, Ch. J., and KIMBALL, J., concur.