CARLOS MATOS, Plaintiff and Appellee, *v.* RAÚL GÁNDARA, IN HIS CAPACITY AS CHIEF OF THE INSULAR FIRE SERVICE OF P. R., Defendant and Appellant.

No. 9674. Argued June 2, 1948.—Decided June 24, 1948.

20

*Luis Negrón Fernández, Attorney General,* and *A. Torres Braschi* and *F. Torres Aguiar, Assistant Attorneys General,* for appellant. *Guillermo S. Pierluissi* and *C. H. Juliá,* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

On July 26, 1946 Carlos Matos filed a petition for mandamus in the district court against Raúl Gándara, as Chief of the Insular Fire Service, praying that the petitioner be reinstated in his post of Assistant Chief of that Service and that he be paid his salary from the date of his suspension on November 22, 1944 until the date of his reinstatement. After a trial on the merits, the lower court denied the petition for reinstatement. However, it ordered that the petitioner be paid his salary from November 22, 1944, the date of his suspension, to February 5, 1946, the date the district court found he had been properly removed from office. The

petitioner took no appeal. The defendant appealed from that part of the judgment ordering the payment of salary.

The first error assigned by the defendant is that the provision for back pay is contrary to law and incompatible with the first provision of the judgment refusing to reinstate the petitioner.

█ Consideration of this error requires a summary of the testimony. On November 22, 1944 charges were preferred by the defendant against the petitioner which were heard by Judge Cordovés Arana, sitting as an arbiter appointed by Governor Tugwell. On January 31, 1945 Judge Cordovés recommended removal of Matos. On the basis of this recommendation, on February 12, 1945 Governor Tugwell directed Gándara in writing to separate Matos from the Insular Fire Service on receipt of his letter. On March 3, 1945 Governor Tugwell cabled Acting Governor Fernós from Washington that his instructions should be carried out at once if they had not already been carried out.

On March 4, 1945 Gándara, who had been delaying removal of Matos because he thought it was not justified, showed the petitioner a copy of the cable from Governor Tugwell. Gándara advised Matos to sign two letters which Gándara had prepared. The letters were predated as of March 2, 1945 in order that they would appear as having been written prior to receipt of the cable. One was a letter from Matos to Gándara resigning his post; the other was a letter from Matos to Governor Tugwell in which the former committed himself not to solicit or accept any other post in the government. Gándara advised Matos that this action was more beneficial from Matos point of view than removal.

Matos signed both letters. Gándara forwarded them to the Governor and the Civil Service Commission, respectively. By letter of March 5, 1945, Gándara advised the Governor of these two letters. In that letter Gándara assured the Governor that he had immediately accepted Matos' resignation.

On March 5, 1945 Matos visited Gándara and asked for the return of his two letters of March 4, which had been predated March 2. Gándara replied this could not be done as the defendant had already forwarded them to the Governor and the Civil Service Commission.

There was a conflict in the testimony as to the next letter. The petitioner presented in evidence a letter from Gándara, dated March 5, 1945, to Matos which reads in part that "your resignation has not been accepted. Your present status is suspension from employment and salary". Gándara testified that he did not remember having written that letter and did not believe he had written it. He admitted the authenticity of his signature, but asserted that he occasionally signed and left at his office letterheads in blank. Matos and another witness testified that Gándara typed the letter himself and signed it in their presence.[1] On the other hand, the record contains a copy of a letter of March 4, 1945 from Gándara to Matos, accepting the latter's resignation, effective November 23, 1944. The parties stipulated that if recalled to the stand, Gándara would testify he mailed this last letter to Matos and that the latter would testify that he never received it.

Almost a year after his original recommendation, at the request of Acting Governor Fernós, Judge Cordovés took additional testimony as arbiter. His new report concluded as follows: "Mr. Carlos Matos has been out of the government for a year by virtue of his resignation, but having in mind his honesty, efficiency and diligence while he served as an employee of the said agency and that his actions with reference to the charges preferred against him were irre-

---

[1] During the trial, at the request of the petitioner, the district court ordered this letter to be submitted to an expert, a government employee, in order to determine if the signature had been affixed to the letter after it was typewritten. In his brief in this Court the petitioner asserts that the expert submitted a report answering the question in the affirmative. But no such report is in the record before us. In any event, as noted hereinafter, the finding of the lower court that Gándara wrote the letter is not challenged here and we therefore accept it.

gularities sanctioned by the established practice in the Insular Fire Service of P. R. which in no way prejudiced the People of Puerto Rico or the said service, as a matter of justice he ought to be given a new opportunity to enter the public service if that is his desire, and we so recommend."

On February 5, 1946 Governor Tugwell wrote the petitioner that while he could not agree with this recommendation, "I feel that it is fair to exonerate you from any punishable guilt and I do so through this letter."

From the foregoing, the district court made two findings of fact: (1) from November 22, 1944, the date the charges were preferred, to February 5, 1946, the date the Governor indicated to the petitioner his decision not to follow the recommendation of Judge Cordovés, the status of the petitioner was that of an official suspended from employment and salary subject to a hearing on charges preferred against him; (2) the letter-of the Governor of February 5, 1946 had the effect of removing the petitioner from office.

The lower court then held that Matos had been properly removed. The theory of the court was that the Governor was empowered to remove Matos without preferring any charges or holding a hearing, in view of *Archilla* v. *Tugwell, Governor,* 63 P.R.R. 397, *Cantellops* v. *Fernós, Commissioner,* 65 P.R.R. 749, the statute creating his post, the Organic Act and other statutes. It is important to note that this part of the judgment denying reinstatement of the petitioner was not appealed by the latter and is therefore the law of the case.

But in the remaining portion of the judgment, from which the defendant has appealed, the district court nevertheless directed the defendant to take the necessary steps for the petitioner to receive back pay for his alleged period of suspension from November 22, 1944 to February 5, 1946. The theory of the district court on this point was that, despite the fact that the petitioner was not entitled thereto, the Governor had chosen to prefer charges against him and to give him an opportunity to be heard. The lower court stated

that this created "a legal situation which we cannot ignore, that is, what is the juridical condition of an employee suspended in employment and salary while charges against him are heard."

The district court therefore held that although Matos could have been removed without charges or a hearing, in view of the fact that charges were nevertheless preferred and a hearing held, the doctrine laid down in *Rosario* v. *Gallardo*, 62 P.R.R. 255, *Rosario* v. *Gallardo*, 65 P.R.R. 53, and *Saenz* v. *Buscaglia*, 61 P.R.R. 384, comes into play and that Matos was entitled as a suspended employee to his back pay if it subsequently developed that the charges on which the hearing was held were unfounded.

Applying this theory, the lower court found that the petitioner was exonerated by the second report of Judge Cordovés; that Governor Tugwell nevertheless chose to remove Matos; that the Governor was entitled to take this action because of his plenary power of removal in connection with this particular office; and that mandamus does not lie to reinstate Matos. But the court then proceeded to hold that since the charges were not established, the petitioner is entitled to back pay from November 22, 1944 to February 5, 1946 under the *Rosario* cases.

We turn first to the finding of fact by the district court that Matos' resignation was never accepted by Gándara. The district court found that Gándara actually wrote the letter of March 5, 1945 to Matos not accepting his resignation. Although it made no explicit finding to that effect, we infer that the lower court also found that Gándara never sent Matos the letter of March 4, 1945 accepting Matos' resignation, a copy of which is in the files of the Civil Service Commission. The defendant does not challenge those findings here. We therefore accept them as correct, despite the fact that on March 5, 1945 Gándara admittedly wrote a letter to Governor Tugwell stating that he had accepted the resignation of Matos.

The gyrations this case took are apparent from the foregoing summary. Even accepting the findings of the lower court, we are by no means certain that Matos' resignation did not take effect, in view of the fact that it was received by Gándara and filed with the Civil Service Commission. Nor are we satisfied that the second report of Judge Cordovés must inexorably be read as an exoneration. On the contrary, Judge Cordovés assumed that the resignation had taken effect a year ago, and he recommended only that Matos be given an opportunity to re-enter the public service, not necessarily the Insular Fire Service in his previous position. But we put aside these questions for a more fundamental point.

Once mandamus is denied for restoration to public office, a serious question arises as to whether the courts may nevertheless grant the independent incidental relief of back pay for improper suspension. Cf. *Cowan* v. *State*, 116 P. 2d 854 (Wyo., 1941); Annotation, 5 A.L.R. 572; *Cantellops* v. *Fernós, Commissioner*, 65 P.R.R. 749, 766; *Abella* v. *Tugwell, Governor*, 68 P.R.R. 430, *Maldonado* v. *War Emergency Program, etc.*, 68 P.R.R. 901. And see § 659, Code of Civil Procedure; *Newbury* v. *Civil Service Commission*, 108 P. 2d 745, 747 (Calif., 1940); *Bailey* v. *Edwards*, 133 P. 1095, 1098 (Mont., 1913); *Brown* v. *Warthen*, 65 P. 255 (Kans., 1901). But even assuming that such relief may be had in other cases, we cannot agree that it is available here.

The district court held that the petitioner was properly removed under the Governor's plenary power of removal and therefore could not be reinstated despite his alleged exoneration by Judge Cordovés. We put aside the point that Governor Tugwell may have thought he was refusing to employ Matos as a resigned employee in a new position, and not refusing to reinstate him as a suspended employee to his old post. The petitioner by not appealing therefrom has accepted the ruling of the district court that Governor Tugwell properly removed him on February 5, 1946. We therefore

accept that ruling as the law of the case. But we cannot agree with the lower court that the mere fact that the Governor chooses to give an employee or officer who is not entitled thereto the privilege of charges and a hearing before exercising his unfettered power of removal, enables the employee to collect his pay for the period of suspension while the charges were pending if the Governor subsequently exercises his unrestricted power of removal despite the fact that at the hearing the charges are not substantiated. The lower court cites no authorities in support of its theory and we have found none. The *Rosario* cases involved a teacher who was entitled by law to charges and a hearing. And in the first *Rosario* case we specifically put aside the cases involving (p. 259) "other public employees not enjoying vested rights such as those conferred by law on permanent teachers. . .".

If under the law an employee may not be removed without the bringing of charges, his suspension and subsequent exoneration present one question. But a wholly different question arises where the Governor orders charges and hearings for employees who serve at his pleasure. Under those circumstances suspension—and ultimate removal—are, as a matter of law, at the will of the Governor and not pursuant to a law which requires this procedure. The suspension—and the removal—are therefore proper without reference to the outcome of the hearing. As the petitioner was properly suspended and properly removed, he is not entitled to mandamus for his pay during the period of suspension.

In view of the result we have reached on the first error, the lower court also committed the second error in awarding costs to the petitioner.

The provisions of the judgment with reference to back pay and costs will be reversed and a new judgment entered dismissing the petition.

Mr. Justice De Jesús did not participate herein.